A. L. KORNMAN COMPANY

*v.*

D. W. MOULTON, Commissioner.

360 S.W.2d 30.

(*Nashville,* December Term, 1961.)

Opinion filed September 7, 1962.

GEORGE F. MCCANLESS, Attorney General, DAVID M. PACK, Assistant Attorney General, Nashville, for appellant.

DAVID C. RUTHERFORD, THOMAS W. STEELE, Nashville, STOCKELL, RUTHERFORD & CROCKETT, PHILLIPS, GULLETT & STEELE, Nashville, of counsel, for appellee.

MR. JUSTICE BURNETT delivered the opinion of the Court.

The bill, as variously amended, sought to quiet title to a portion of certain lands which had previously been acquired under eminent domain proceedings by the City of Nashville acting as an acquisition agent on behalf of the State of Tennessee. Apparently the condemnation in the first instance was pursuant to Chapter 73 of the Public Acts of 1949 wherein authority was given to condemn land for the purpose of constructing the "Victory Memorial Bridge". This bridge was constructed and at the end of the bridge, where the land is now sought, a large building was taken down and demolished, and the bridge duly constructed with various and sundry grass plots around the edge, etc. By the present bill it is alleged that a small portion of this land, which was taken under the condemnation proceedings, has been abandoned and that only an easement was condemned in the first instance and since the land has been abandoned it reverts to the appellees, who are successors in title to the owners of the property at the time the condemnation suit was had.

The suit was originally instituted against the City of Nashville, but it was discovered that the City had conveyed any interest that it had in it to the State by a quitclaim deed, and there seems to be no argument or discussion of the fact that the City in acquiring the land in the first instance was merely the acquisition agent on behalf of the State. The City on a proper plea is out of the lawsuit, and the present appellant, Commissioner of Highways, was properly made a defendant to the suit.

The Commissioner filed his motion to dismiss, alleging that this was in effect a suit against the State and was filed against him in an effort to reach property belonging

to the State, and that such suit, being one against the State, may not be maintained because of inhibitions found in the State Constitution, Article 1, sec. 17, providing that: "Suits may be brought against the State in such manner and in such courts as the Legislature may by law direct", and in T.C.A. sec. 20-1702 (which originated with the Act of 1873), providing as follows:

"No court in the state shall have any power, jurisdiction, or authority to entertain any suit against the state, or against any officer of the state acting by authority of the state, with the view to reach the state, its treasury, funds, or property, and all such suits shall be dismissed as to the state or such officers, on motion, plea, or demurrer of the law officer of the state, or counsel employed for the state."

When this motion of the Commissioner came on to be heard it was overruled by the Chancellor. To his action in overruling the motion the Commissioner excepted and prayed a discretionary appeal. This appeal was granted by the Chancellor, the Chancellor treating the motion as a demurrer under the provisions of sec. 20-1702, T.C.A.

We now are met with a motion on behalf of the appellee to dismiss this appeal because it is premature and does not settle any rights of the parties; that this being true the Chancellor had no discretion or authority to grant the appeal from his ruling disallowing this motion.

Insofar as here applicable the statute, sec. 27-305, T.C.A., allowing discretionary appeals provides, as follows:

"The Chancellor * * * may, in his discretion, allow an appeal from his decree in equity causes determin-

ing the principles involved * * *; or he may allow such appeal on overruling a demurrer; * * *."

■■ This statute has been before this Court and the Court of Appeals numerous times as will be noted by various decisions cited following this Code Section. Suffice it to say, these decisions clearly support the proposition that the Chancellor may upon sustaining or overruling a demurrer, which determines certain rights of the parties involved in the litigation, grant a discretionary appeal. It is obvious to us that when the Chancellor considered this motion as a demurrer (he had this right, *Morgan v. Layne,* 165 Tenn. 513, 518, 56 S.W.2d 161, 162). This motion, or demurrer as it was treated, raises the direct question of whether or not it is necessary for the State to defend an action of the kind here (an action to quiet title or to remove a cloud from the title), and if the States does not have to defend the demurrer settles the question entirely; while if it does have to defend this right of the State, it will be settled by the action on this demurrer. Consequently, we think that the Chancellor was well within his rights and that he exercised his discretion in allowing this appeal fairly and on reason and not as an arbitrary or capricious act. Having thus acted, as we see it under this record, the motion to dismiss because the discretionary appeal was improvidently granted will be overruled.

We now come to the merits of the controversy as set forth hereinbefore when we stated the question the demurrer raises, that is, whether or not the State may be sued in an action to quiet title or to remove a cloud from a title claimed by the original complainant, now appellee.

■ In *Brooksbank v. Leech,* 206 Tenn. 176, 332 S.W.2d 210, we said that a suit against a Commissioner of Highways is a "suit against the State." We cited authority there for that proposition. So we begin a discussion of the question here with that premise settled, that is, that the present suit against the Commissioner of Highways is a suit against the State. This being true, should the plea of sovereign immunity of the State be upheld by this Court under the allegations of the bills herein? This Court in *Fritts v. Leech,* 201 Tenn. 18, 296 S.W.2d 834, had the question before it of sec. 20-1702, T.C.A., and there made the comment that "Therefore, it is evident that this suit in the aspect of an ejectment suit is one with a view to reach the property of the State, in violation of said above Code section." The argument, of course, is that a suit to quiet title or remove a cloud from title would in every respect be as much a suit against the State as would an ejectment suit. Some authorities from other jurisdictions that we have run into hold to this effect.

*Chumbley v. State,* 183 Tenn. 467, 192 S.W.2d 1007, was a suit in which Chumbley sought possession of a tract of land which was at the time of the institution of the suit in possession of the State, and in which he asserted a superior title. This Court held that such an action "being a suit against the State of Tennessee, it is barred by Article I, section 17 of the Constitution, since it is not brought in such manner as the Legislature has directed."

There is no claim in the present suit that there has been any legislative enactment which would permit the State to be sued in an action of the kind now before us.

In addition to reading the excellent briefs and the authorities cited therein by both sides we, to satisfy our own mind about the matter, made a rather extensive investigation. In the course of this investigation we investigated the quieting of title as is reported in 44 Am. Jur., sec. 77, under that title, at page 62, and we found that the author of that work says this:

"When land sold for nonpayment of taxes has been bought in by the state, the owner cannot bring a bill to remove the cloud upon his title against the comptroller of the state, because such a proceeding is in effect a suit against the state itself."

As authority for that statement the author cites *Sanders v. Saxton,* 182 N.Y. 477, 75 N.E. 529, 1 L.R.A., N.S., 727, 108 Am.St. Rep. 826. This same case is cited in appellant's brief. We have read the case twice, and think to all intents and purposes it supports the proposition of the Commissioner here.

In the Sanders case the lower courts decided to the contrary but when it was taken to the court of last resort of New York that court unanimously held that it was a suit against the State and could not be maintained. It was said in the Sanders case that the "only object and purpose of a suit in equity to remove a cloud on the title to property is to have any adverse title that may be asserted under such cloud passed on and adjudged void, so that the plaintiff in possession may be forever afterwards free from any danger of the hostile claim, it would seem plain that, where the judgment in an action cannot conclude or bind a party claiming under the adverse title, the action must fail." In other words it was necessary to have the State a party where it had

title to the property. The court in this Sanders case said further; ''The same principle governs the case now before us. The title now sought to be adjudged void is the title of the people of the state, the defense of which has not been committed to any officer by whose appearance the state could be concluded.'' Further, ''As we have not been referred to any statute authorizing a suit against the state for the matter set forth in the complaint, we are of opinion that the action cannot be maintained.''

The State likewise in support of their proposition that the suit cannot be maintained cites *American Trust & Savings Bank of Albuquerque v. Scobee,* 29 N.M. 436, 224 P. 788, which was a suit to quiet title and remove a cloud, wherein the State had reserved certain mineral rights. The court held such an action could not be prosecuted against the State.

Likewise the State cites *Hjorth Royalty Co. v. Trustees of University of Wyoming,* 30 Wyo. 309, 222 P. 9. This was a suit against the University to quiet title, and in reading the opinion we find that the court premised its opinion on the fact that this was a suit against the State, and as such could not be maintained and devoted the majority of the opinion to the finding of whether or not the Trustees of the University were in effect standing in the shoes of the State, so to speak, and, if so, it was the same as suing the State. The court so concluded and held that the suit was not maintainable without the consent of the State. The opinion quotes the language of Article I, sec. 8, of the Constitution of Wyoming, which is identical with Article I, sec. 17, of the Constitution of Tennessee herein before quoted.

We have read the other cases cited in the briefs and in our investigation find also that the question of a suit against the State is annotated at length in 44 L.R.A.,N.S., 189, 42 A.L.R. 1464, and 50 A.L.R. 1408. In these various annotations there are cases from practically every State of the Union cited, including many from Tennessee, wherein the plea, as here entered on behalf of the State, was sustained. In other words, the courts unanimously uphold the plea of immunity of the State to be sued in the absence of its consent. This doctrine was probably first recognized by the Supreme Court of the United States in *Cohens v. Virginia,* 6 Wheat. 264, 380, 5 L.Ed. 257, wherein Chief Justice Marshall, speaking for the Court, gives assent to the principle and says this: ''The counsel for the defendant in error * * * have laid down the general proposition, that a sovereign independent state is not suable except by its own consent.'' This general proposition, he adds, will not be controverted.

Counsel for the appellee cites in support of the proposition that such a suit is maintainable. *Lyon, etc. v. State of Idaho,* 76 Idaho 374, 283 P.2d 1105. Reading certain statements in that case it would seem that the case supports their position. A careful reading of the case though will show, in the second paragraph thereof, this: ''Appellants in their brief have evidently abandoned the claimed right to maintain the action against the State of Idaho. We quote from their brief as follows: 'It is conceded here that the State of Idaho cannot be sued and was so conceded at the time of argument. * * *' Hence we shall not discuss or decide whether the respondent State of Idaho is immune because of sovereignty from a suit of this nature, but shall limit the decision to the claimed right to maintain the action against the Board of Edu-

cation of the State of Idaho." Thus, as we see it, this case is in effect not authority for the proposition advanced.

Appellee likewise cites *Boxberger v. State Highway Department,* 126 Colo. 438, 250 P.2d 1007, from the Supreme Court of Colorado, and quotes at length therefrom. This quotation and what this opinion held was nothing more than you couldn't take private property from a person without giving them just compensation. In other words in this case the State Highway Department of Colorado had taken the property of Boxberger and didn't want to compensate him for it, thus the court held that this was a violation of sec. 15 of Article II, of the Constitution of Colorado, which provided, "Private property shall not be taken or damaged, for public or private use, without just compensation." Thus it was that this case is based on the provision of the Constitution of Colorado which is almost identical with the Fifth Amendment to the Constitution of the United States which provides, "* * * nor shall private property be taken for public use, without just compensation." The same meaning is gotten from Article I, sec. 8, of the Constitution of Tennessee. Thus it is that these authorities are not authority for the proposition that the plea of immunity on behalf of the State is not good. The fact of the business is, we think, under all authorities that we can find, especially including those of Tennessee, that such a plea must be sustained if the factual provision brings it within the inhibitions of the Constitution, Article I sec. 17, and Code Section 20-1702, heretofore cited. Exceptions, of course, have been made as were made in *Stockton v. Morris & Pierce,* 172 Tenn. 197, 110 S.W.2d 480, wherein the Court cited and quoted from an earlier

case of the Insurance Commissioner wherein an exception was likewise made, and it was shown that those things were not a suit against the State in the sense that they were trying to acquire property of the State. Those suits though are not germane here.

The appellee likewise relies on *United States v. Lee,* 106 U.S. 196, 1 S.Ct. 240, 27 L.Ed. 171. In this case, the Lee case, it was held that, while the United States could not be sued without its consent, still an action might be brought in ejectment to recover lands in the possession of the officers and agents of the United States. This case and others support the doctrine that officers and agents of the United States and of the States may be sued for their illegal acts or to recover property illegally possessed by them despite the immunity of their principal. That doctrine does not cover the case before us.

Counsel for the appellee apparently recognized what has been said above and they state that if this plea is right they are not remediless because the refusal to allow them to set up their claim to the abandonment of this property (of course, the burden is on the one who claims abondonment to show the abandonment) is violative of the due process provisions of Article I sec. 8, of the Tennessee Constitution, above referred to, and the relevant portion of the Fifth Amendment to the United States Constitution, above referred to. In making this argument they refer to statements we made in the Brooksbank case, and also they quote from the Boxberger case, supra, as well as the holding of the Supreme Court of the United States in *United States v. Lee,* supra, and particularly in the case of *Armstrong v. United States,* 364 U.S. 40, 80 S.Ct. 1563, 4 L.Ed.2d 1554. This is a very

502

interesting case (the Armstrong case). In this case certain claimants had done work on ship hulls which were under contract to be built for the United States. Apparently the builder failed and liens were attempted to be perfected by lien holders. In the meantime the United States had taken over these ships and the question then arose as to whether or not they could get their money on these liens. The lower courts held they could not for reasons not necessary here to repeat, while the Supreme Court of the United States reversed the holding in this case based on the fact that when the government took over this property it constituted a taking within the relevant portion of the Fifth Amendment, above quoted. It is said that we should invoke this same procedure here and hold that the appellee has a right to set up his claim that there had been an abandonment by the State of this property and assert it. The State takes the position that one constitutional provision should not be thrown up against another. We don't think it is necessary to do that, as the two can be read together. If it is found that the State is taking a person's property without just compensation, then this provision of the Constitution can be and should be enforced because clearly it was never the intention of the framers of our Constitution and the enactors of the statute providing immunity for the State that the State could take the property of its citizens and not compensate them for it.

We think though that here under the particular facts of this case another question arises which isn't discussed in any of the briefs and probably of greater importance in view of the constitutional provisions referred to and the legislative history of the immunity of the State, and that is that it would be against the public

policy to force the State to defend after it has through lawful means condemned and paid the full value of the property condemned. Of course, it could be argued that this may be begging the question, or whatnot, because it is said as it stands there is the allegation that the State has abandoned this and thus having abandoned it the title reverts to the appellee. This, of course, would be true assuming there is an abandonment and things of that kind, but looking at it from a practical standpoint we know that even though the State merely condemned in the first instance an easement, that in a condemnation proceeding the damages are fixed by a jury at an amount equal to the value of the fee. We can almost take judicial knowledge of this fact, and in a condemnation by the State to take the property of a private individual, and in this case a large building was wrecked by the State as if the whole thing would be used, we cannot put our stamp of approval on allowing the State officers to be sued after the State had acquired the property by a legitimate condemnation suit and paid the damages. To allow the State officers to then be sued for any little strips here and there along the highways in building the various bridges and highways, would take extra courts and the number of people who would be required to look after and do these things would be prohibitive. Then, too, we know as a practical proposition that if properties have been abandoned by the State after they have been taken by legitimate condemnation that sooner or later the State by proper legislation will consent to the proper owners through proper proceedings having their property back. In other words, what we are trying to say is that after there has been a legitimate fair compensation paid for the property even though taken for an easement

when there is an alleged abandonment of that easement afterwards the State should not have to defend that suit without its consent to it. The compensation for this easement taken was for the value of the land as if the fee had been taken. *Kentucky-Tennessee Light & Power Co. v. Beard,* 152 Tenn. 348, 277 S.W. 889.

For reasons herein stated the motion, which is considered as a demurrer, will be sustained and the cause dismissed as to the Commissioner.

FELTS and DYER, JUSTICES, concur.

WHITE and TOMLINSON (retired), JUSTICES, did not participate herein.