230

# A. L. KORNMAN COMPANY v. The METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, TENNESSEE.—417 S.W.(2d) 793.

Middle Section. February 24, 1967.

Certiorari Denied by Supreme Court June 19, 1967.

David C. Rutherford, Thomas Wardlaw Steele, Nashville, for plaintiff in error.

Seymour Samuels, Jr., D. L. Lansden, Nashville, for defendant in error.

SHRIVER, J. This suit involves the ownership of a parcel of land 26 feet in width fronting on the public square in Nashville, being a part of a tract acquired by the City of Nashville by condemnation as a right-of-way for the Memorial Bridge across the Cumberland River. The original condemnation case was filed against Acorn Realty Company and involved a lot 115 feet in width on which was located the Kornman Building, a multiple story brick structure with three basements at different levels. This building was torn down and the Memorial Bridge now occupies the northern 74 feet of the lot leaving the 26 foot strip in question which is not physically occupied by the bridge structure. It is the contention of the appellant that the part of the lot not occupied by the bridge was abandoned upon completion of the bridge and reverted to A. L. Kornman Company, successor of Acorn Realty Company.

The original property owner in the condemnation suit received $243,600.00 as compensation for the taking of the 115 foot lot and improvements. Of this sum $93,600.00 represented the value of the land taken. It is pointed out

that the condemnation did not vest title to the fee in the city but conveyed only an easement for use as part of the State Highway system.

The right-of-way plans which were approved by the Federal Bureau of Roads and the Highway Department of Tennessee included the 26 feet in controversy and called for the sodding of the entire area.

The record also shows that when the Kornman Building was torn down the three concrete basements were removed and filled in as a part of the construction of the bridge project. The plans called for the building of a wall on a solid foundation of rock or piles and this necessitated the removing of the rubble in the sub-basements to provide proper footings for the abutment of the bridge. Subsequently, the area formerly occupied by the three sub-basements was filled in and covered with sod.

The south wall of the Kornman Building was immediately adjacent to the Riddle Building which was not a part of the land condemned and in order to reinforce the northern wall of said building a concrete wall was built extending from the third sub-basement below the ground up to the side of the wall of the Riddle Building.

R. S. Patton, design engineer for the State, testified that the 26 foot strip in question here is shown to be a part of the plan for the bridge and was acquired by condemnation on June 2, 1951. The bridge was completed in July 1956. Thereafter, on July 1, 1958, the city executed a quit-claim deed to this property to the State of Tennessee.

It is pointed out in the brief and argument in support of the assignments of error that this appeal presents the

latest chapter in a long succession of judicial proceedings involving the claim of the Kornman Company that it owns the parcel of land in question by reason of the fact that it was not used as a part of the bridge structure and was abandoned by the State after the erection of the bridge. The dispute between the plaintiff-in-error and the State regarding this property has already been before the Supreme Court of Tennessee in two separate suits. In A. L. Kornman Co. v. Moulton, 210 Tenn. 491, 360 S.W.2d 30, the Supreme Court of Tennessee upheld the State's plea of sovereign immunity and an appeal to the U. S. Supreme Court was dismissed for want of a substantial Federal question. See A. L. Kornman Co. v. Pack, 373 U.S. 63, 83 S.Ct. 1118, 10 L.Ed.2d 197.

In that case, as is pointed out by counsel, plaintiff-in-error had instituted suit in the Chancery Court of Davidson County to remove a cloud from its title to the property, basing its claim on an abandonment of the easement. Following the final determination of that litigation, plaintiff-in-error attempted in the later part of 1963 to make use of the property by storing some old automobiles thereon. These automobiles were promptly removed by the State following which plaintiff-in-error placed a tent on the property and rented or was about to rent same to a third party when it was removed by the State which then caused a fence to be erected enclosing the property, thus preventing any further use of it by plaintiff-in-error who now claims that this action by the State constituted a second taking of the property. Thereupon the case at bar was filed in the Circuit Court of Davidson County as a "reverse condemnation" suit seeking damages for the fair value of property thus taken the second time by the State.

This suit was met by two special pleas of res judicata wherein the State contended (1) that the decree in the original condemnation suit was res judicata and (2) that the final decree in A. L. Kornman Co. v. Moulton, supra, was res judicata.

These pleas were sustained by the Trial Judge and the case was appealed to the Supreme Court of Tennessee which held that the Circuit Court erred in sustaining the pleas of res judicata and that plaintiff-in-error was entitled to a trial on the merits on the question of abandonment of the easement. On remand the case was tried in the Second Circuit Court of Davidson County before Circuit Judge John L. Uhlian, without a jury, and resulted in a verdict in favor of the State. It is from this decree that the case was appealed and is here for determination.

It is stated by counsel for plaintiff-in-error that this appeal presents the question whether or not there was any evidence to sustain the verdict of the Trial Court below, or, whether the evidence preponderates against the judgment of the Trial Court and in favor of plaintiff-in-error. The Assignments properly raise this issue.

It is argued by counsel for plaintiff-in-error that Rogers v. City of Knoxville, 40 Tenn.App. 170, 289 S.W. 2d 868, supports its position and is authority for the proposition that where a right-of-way is condemned by a City or State there is an implied condition that the land taken will be devoted to a public use and where it is not so used for an unreasonably long period of time, the presumption arises that it has been abandoned and this casts the burden on the condemnor to disprove an intention to abandon. It is also pointed out in Rogers v. City

of Knoxville, supra, that where land is held by the condemning authority and there is no existing public need, the land will revert to the owner unless the condemning authority has a fixed time in the future when the land will be needed upon the happening of certain contingencies.

We think there are some features in Rogers v. City of Knoxville, supra, which readily distinguish it from the case at bar and prevent it from being as persuasive as counsel insist it is.

Brady v. Correll, 20 Tenn.App. 224, 97 S.W.2d 448, is cited as authority for the proposition that where a right-of-way is condemned, it reverts to the owner upon non-user, and long-continued non-user is evidence of an intention to abandon. Also see McGiffin v. City of Gatlinburg, 195 Tenn. 396, 260 S.W.2d 152.

On the question of abandonment in the case at bar it is to be noted that after the 26 foot strip in question had been filled in and sodded the State kept the grass cut from the date of the sodding to the trial of this case below and that the intention to abandon was definitely contradicted by the action of the State authorities in removing the automobiles and the tent placed there by plaintiff-in-error and by the building of a fence enclosing the land.

One of the State's witnesses, Mr. Fred Greve, is quoted as stating that he knew of no proposed use of the property in question and that as far as he knew the State had not used it since the completion of the bridge, however, it is to be noted that he also stated that he would not necessarily know anything about such proposed use since his duties concerned the bridge structure only. He also testi-

fied that maintenance of the bridge could be accomplished by entering the property from the north side but that it would be more convenient to use the area in question by approaching the bridge from the south for that purpose.

It is argued by counsel for the State that in order for A. L. Kornman Company to prevail in this case it will be necessary for the Court to find that the land in question was abandoned upon completion of the bridge and that the enclosure by the State by the erection of a fence about February 1, 1964 constituted an additional taking of this land for public purposes for which plaintiff should be compensated.

It is also argued that every act complained of as amounting to a second taking was an act done by the State in an effort to maintain possession of the property and to prevent plaintiff-in-error from asserting dominion and control over it.

It is further argued by counsel for the State that State ex rel. Phillips v. Smith, 34 Tenn.App. 608, 241 S.W.2d 844 is more nearly parallel to the case at bar than any other reported Tennessee case. This was a suit by the Commissioner of Highways to enjoin Smith from placing waste matter and trash upon and exercising acts of ownership of a portion of the right-of-way of State Highway No. 1. The right-of-way had been acquired under a condemnation proceeding but the defendant claimed it had been abandoned.

In the course of the opinion the Court stated:

"* * * With reference to what will constitute abandonment in an easement, the Supreme Court, in the case of Boyd v. Hunt, 102 Tenn. 495, 499, 52 S.W. 131, said: 'Further, that mere nonuser will not amount to an

abandonment which will impair or defeat an easement * * *. The failure to use must be accompanied by some act of the owner of the dominant estate clearly indicating his purpose to set up no further claim in order to work abandonment. Washb. Easem. [& Ser.] pp. 707-717.

\* \* \* \* \* \*

In Dill v. Board of Education, 47 N.J. Eq. 421, 20 A. 739, 10 L.R.A. 276, it was held that nonuse alone, for any length of time, will not extinguish an easement created by express grant, and that to accomplish this result there must be nonuse accompanied by 'some conduct on the part of the owner of the servient tenement adverse to and defiant of the easement, and the nonuse must be the result of it.' See also, Woods v. Bonner, 89 Tenn. 411, 18 S.W. 67, Phy v. Hatfield, 122 Tenn. 694, 126 S.W. 105; Smelcer v. Rippetoe, 24 Tenn.App. 516, 147 S.W.2d 109.

\* \* \* \* \* \*

* * * It may be that in years to come the state will require an additional portion of the right-of-way in order to widen the pavement. If so, the area will be available. In the meantime, under its general power to control its highways, the state has authority to authorize any use of the right-of-way consistent with the purpose of the highway and not in derogation of the rights of the public or those of the abutting landowners.''

We agree with the statement in 1 Am. Jur. pp. 6 & 7, Sec. 8, where it is said:

"The primary elements of abandonment are the intention to abandon and the external act by which the

intention is carried into effect. The intention to abandon is considered the first and paramount inquiry. Abandonment may arise from a single act or from a series of acts. Time is not an essential element of abandonment, and is of no importance except as indicative of intention. 1 Am. Jur. pp. 6 and 7, Sec. 8.''

Also see Cottrell v. Daniel, 30 Tenn.App. 339, 343, 205 S.W.2d 973, 975, where it was held as follows:

'' 'The Supreme Court of this State speaking on this question said: "Indeed, in order to justify the conclusion that there has been an abandonment, there must be some clear and unmistakable affirmative act indicating a purpose to repudiate the ownership. This was the substance of the decision of the court upon this point in Woods v. Bonner, 89 Tenn. 411, 414, 415, 18 S.W. 67 * * *'' Phy v. Hatfield, 122 Tenn. 694, 126 S.W. 105, 135 Am.St.Rep. 888, 19 Ann.Cas. 374.' '' Cottrell v. Daniel, 30 Tenn.App. 339, 343.

In A. L. Kornman Co. v. Moulton, 210 Tenn. 491, 502-503, 360 S.W.2d 30 the Supreme Court, speaking through Mr. Chief Justice Burnett, referring to the property involved here said, among other things:

''* * * it would be against the public policy to force the State to defend after it has through lawful means condemned and paid the full value of the property condemned. Of course, it could be argued that this may be begging the question * * * because it is said as it stands that the allegation that the State has abandoned this and thus having abandoned it the title reverts to the appellee. This, of course, would be true assuming there

is an abandonment * * * but looking at it from a practical standpoint we know that even though the State merely condemned in the first instance an easement, that in a condemnation proceeding the damages are fixed by a jury at an amount equal to the value of the fee. * * * and in this case a large building was wrecked by the State as if the whole thing would be used, we cannot put our stamp of approval on allowing the State officers to be sued after the State had acquired the property by a legitimate condemnation suit and paid the damages. To allow the State officers to then be sued for any little strips here and there along the highways in building the various bridges and highways, would take extra courts and the number of people who would be required to look after and do these things would be prohibitive. Then, too, we know as a practical proposition that if properties have been abandoned by the State after they have been taken by legitimate condemnation that sooner or later the State by proper legislation will consent to the proper owners through proper proceedings having their property back. In other words, what we are trying to say is that after there has been a legitimate fair compensation paid for the property even though taken for an easement when there is an alleged abandonment of that easement afterwards the State should not have to defend that suit without its consent to it. The compensation for this easement taken was for the value of the land as if the fee had been taken. Kentucky-Tennessee Light & Power Co. v. Beard, 152 Tenn. 348, 277 S.W. 889.''

Under the facts of this case we are convinced that there was no abandonment of this land by the State, hence no reversion to the owner of the fee.

240

It results that the assignments of error are overruled and the judgment of the Trial Court is affirmed.

Affirmed.

Humphreys and Puryear, JJ., concur.