IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 7, 2010 Session

# CHARLES M. MYER, III ET AL. v. THE METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY

Appeal from the Circuit Court for Davidson County
No. 04C-2897      Barbara N. Haynes, Judge

No. M2009-01644-COA-R3-CV - Filed March 3, 2010

Property owners sued, alleging that the Metropolitan Government was using or taking their property without their permission and without compensation. The Metropolitan Government took an easement over the property by eminent domain and the State built the Victory Memorial Bridge over part of it. The Metropolitan Government later transferred its interest in the property to the State. Much later, the Metropolitan Government built the Gay Street Connector over part of the easement and maintained exclusive control over the part of the easement not used for the bridge. The trial court found for the government. The property owners appealed. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and RICHARD H. DINKINS, J., joined.

Ben H. Cantrell, Nashville, Tennessee, for the appellants, Charles M. Myer, Virginia Myer, Edwin B. Raskin, and Rebecca K. Raskin.

James Earl Robinson, Cynthia Ellen Gross, and Philip Daniel Baltz, Nashville, Tennessee, for the appellee, The Metropolitan Government of Nashville and Davidson County.

# OPINION

## BACKGROUND

This lawsuit has a rather long history. In 1949, the legislature passed an act providing for the construction of the Victory Memorial Bridge over the Cumberland River[1] in Nashville in honor of Tennesseans who gave their lives in World War II. 1949 Tenn. Pub. Acts, Ch. 73.[2] The City of Nashville,[3] acting as acquisition agent for the State of Tennessee, condemned an easement over the entirety of the property of the plaintiffs' predecessor-in-interest.[4] The city did not rely on the 1949 act as authority for the condemnation action. The 1950 ordinance under which the city authorized the taking of the property references thes

---

[1]The Victory Memorial Bridge extends from the northeast corner of the Public Square to Third and Main Streets in East Nashville. Wilbur Foster Creighton, BUILDING OF NASHVILLE 92-93 (1969). This is the site of the first bridge to span the Cumberland River in 1823. *Id*. at 93. It lasted 28 years and was demolished because large steamboats could not pass under it during high-water periods. *Id*. at 75. It was replaced by a suspension bridge built at the southeast corner of the Public Square, which is now the site of the Woodland Street Bridge. *Id.* at 77. The new bridge did not last long. In 1862, as the Confederates were evacuating Nashville, General Albert Sidney Johnston ordered the wires of the suspension bridge cut. *Id*. at 78. The bridge fell into the river. *Id*.

[2]One historian has suggested that the planned redevelopment of Capitol Hill influenced the placement of the bridge: "A major traffic loop around the north side of the state Capitol was already being suggested by 1949. The bridge blended nicely with that concept, now known as James Robertson Parkway." George Zepp, *Victory Memorial Bridge Opened in '56 to Honor 752 Killed in WWII*, NASHVILLE TENNESSEAN, Aug. 16, 2006, at 4B.

[3]The Metropolitan Government of Nashville and Davidson County ("Metro") is the successor-in-interest to the City of Nashville.

[4]The complaint states: "The plaintiffs are the successors in interest to Akorn Realty Company, which merged with A.L. Kornman Company prior to 1959. A.L. Kornman Company was dissolved in 2003 and its interest in the subject real property is now owned by the plaintiffs." A subsequent appellate court opinion provides the following details:

> The original condemnation case was filed against Acorn Realty Company and involved a lot 115 feet in width on which was located the Kornman Building, a multiple story brick structure with three basements at different levels. This building was torn down and the Memorial Bridge now occupies the northern 74 feet of the lot leaving the 26 foot strip in question which is not physically occupied by the bridge structure.

*A.L. Kornman Co. v. Metro. Gov't of Nashville & Davidson County*, 417 S.W.2d 793, 794 (Tenn. Ct. App. 1967) (*"Kornman III"*). The A.L. Kornman Building was the only structure on the downtown side of the river that had to be condemned to make way for the western bridge approach. Zepp, at 4B. It was on the east side of the Public Square. The remaining buildings on the east side of the Public Square were demolished in 1974.

state's eminent domain law as authority. Bill 50-418, Sec. 2. Section 1-A of the ordinance authorized the taking of the land on which the Kornman building resided "for public highway and street purposes." The precise use for the land was not stated although the ordinance does state that it was to "give Bridge Street in [sic] increased width" as indicated by plans in the office of the Commissioner of Highways and Public Works and in the office of the City Clerk. Interestingly, nowhere in the ordinance is the building of a bridge specifically mentioned.

The Victory Memorial Bridge was built by contractors for the State Highway Department at a total cost of almost 4 million dollars. Creighton, at 93, 99. It opened in 1956. Zepp, at 4B. In 1958, the City conveyed its interest in the property to the State by a quitclaim deed.

In August 1959, the A.L. Kornman Company sued the City and the Tennessee Commissioner of Highways seeking title to a portion of the land which had allegedly been abandoned.[5] The City extricated itself from the litigation by showing that, due to the prior quitclaim deed, the City had no interest in the property. The Commissioner filed a motion to dismiss alleging the suit was a suit against the State seeking to reach property belonging to the State. The Tennessee Constitution, Art. I, Sec. 17, and state statutes prohibited such suits. The trial court overruled the motion but allowed a discretionary appeal by the Commissioner. The Tennessee Supreme Court found that the suit was indeed a suit against the State but did not end its inquiry there. The plaintiff argued that it was being denied due process under the Tennessee Constitution, Art. I, Sec. 8, and just compensation.[6] The Supreme Court determined:

> If it is found that the State is taking a person's property without just compensation, then this provision of the Constitution can be and should be enforced because clearly it was never the intention of the framers of our Constitution and the enactors of the statute providing immunity for the State that the State could take the property of its citizens and not compensate them for it.

---

[5]According to the discussion of this case in a later appellate opinion, A.L. Kornman claimed that when the street improvement was completed, the south 26 feet of the original lot, fronting on the Public Square and running from the square to the river, remained unused and unneeded and that this property was, therefore, abandoned. *A.L. Kornman Co. v. Metro. Gov't of Nashville & Davidson County*, 391 S.W.2d 633, 634 (Tenn. 1965) ("*Kornman II*").

[6]Although it was not cited in the opinion, Art. I, Sec. 21 of the Tennessee Constitution prohibits the taking of property for public use without just compensation.

*A.L. Kornman Co. v. Moulton*, 360 S.W.2d 30, 34-35 (Tenn. 1962) (*"Kornman I"*). The Court then engaged in an analysis of whether just compensation had been provided already and concluded that it had because Tennessee law required that damages for an easement be fixed at an amount equal to the value of the fee.[7] *Id*. at 35. Thus, the Court held that "after there has been a legitimate fair compensation paid for the property even though taken for an easement when there is an alleged abandonment of that easement afterwards the State should not have to defend that suit without its consent to it." *Id*.

In February 1964, A.L. Kornman Company filed a suit against Metro over the same property as in the prior suit. *Kornman II*, 391 S.W.2d at 633. The company claimed that it had unencumbered ownership of this property due to abandonment by the State and that Metro, acting for the State, took possession of this property for public use without compensation to the company. *Id*. at 635. Metro pled res judicata, claiming that (1) the case was precluded by the original condemnation decree and (2) the earlier proceedings had necessarily determined that no abandonment had occurred. *Id*. The trial court dismissed the case, and the company appealed. As to the first ground for res judicata, the Supreme Court determined:

> [it] would be valid of course if the condemnor had taken the full fee in the condemnation proceeding rather than a mere easement. However, the condemnation decree itself expressly stated that a mere easement was condemned. Also, it is settled that the condemnor can take no greater interest in the land condemned than is necessary for the proposed use.[8]

*Id*. The second ground for the res judicata plea, that the earlier proceedings had necessarily determined that no abandonment had occurred, was rejected. *Id*. at 636. The issue of abandonment was not litigated at all because Metro got out of the lawsuit and the State was found to be immune from suit. *Id*. at 636-37. Therefore, the Supreme Court remanded the case for further proceedings. *Id*. at 637.

---

[7]The Supreme Court cited *Kentucky-Tennessee Light & Power Co. v. Beard*, 277 S.W. 889 (Tenn. 1925). In that case, the Court held that a permanent easement should be compensated for as if the fee had been taken. *Id*. at 891. The fee left in the owner after a permanent easement is taken, said the Court, "is for all practical purposes valueless." *Id*. (quoting 20 CORPUS JURIS, 726). The ruling was based on Thompson's-Shannon's Code Sec. 1857, which stated in pertinent part: "In estimating the damages, the jury shall give the value of the land without deduction . . . ." We note that by 1950, the statute, then Williams Code Sec. 3122, read: "In estimating the damages, the jury shall give the value of the land *or rights taken* without deduction . . . ." (emphasis added).

[8]Curiously, the Supreme Court in *Kornman II* ignored the argument it advanced in *Kornman I* that the owners of the land had been paid full compensation for the fee. *See* discussion *supra* and note 7.

On remand, the circuit court ruled for the State, and the company appealed, maintaining "that the part of the lot not occupied by the bridge was abandoned upon completion of the bridge and reverted to A. L. Kornman Company, successor of Acorn Realty Company." *Kornman III*, 417 S.W.2d at 794. Evidence and testimony at trial included the following:

> The right-of-way plans which were approved by the Federal Bureau of Roads and the Highway Department of Tennessee included the 26 feet in controversy and called for the sodding of the entire area.
>
> . . . .
>
> R. S. Patton, design engineer for the State, testified that the 26 foot strip in question here is shown to be a part of the plan for the bridge and was acquired by condemnation on June 2, 1951. The bridge was completed in July 1956. Thereafter, on July 1, 1958, the city executed a quitclaim deed to this property to the State of Tennessee.

*Id*. at 794-95. On appeal, after recounting the history of the prior two appeals, the court stated the facts that gave rise to the suit:

> [P]laintiff-in-error attempted in the later part of 1963 to make use of the property by storing some old automobiles thereon. These automobiles were promptly removed by the State following which plaintiff-in-error placed a tent on the property and rented or was about to rent same to a third party when it was removed by the State which then caused a fence to be erected enclosing the property, thus preventing any further use of it by plaintiff-in-error who now claims that this action by the State constituted a second taking of the property. Thereupon the case at bar was filed in the Circuit Court of Davidson County as a 'reverse condemnation' suit seeking damages for the fair value of property thus taken the second time by the State.

*Id*. at 795. The State argued "that every act complained of as amounting to a second taking was an act done by the State in an effort to maintain possession of the property and to prevent plaintiff-in-error from asserting dominion and control over it." *Id*. at 796.

The 1965 Supreme Court *Kornman II* decision had held that an easement taken by eminent domain proceedings can be abandoned. *Kornman II*, 391 S.W.2d at 635. In *Kornman III*, the Court of Appeals observed:

On the question of abandonment in the case at bar it is to be noted that after the 26 foot strip in question had been filled in and sodded the State kept the grass cut from the date of the sodding to the trial of this case below and that the intention to abandon was definitely contradicted by the action of the State authorities in removing the automobiles and the tent placed there by plaintiff-in-error and by the building of a fence enclosing the land.

*Kornman III*, 417 S.W.2d at 796. The court found that under the facts of the case there was no abandonment of the land by the State and no reversion to the A.L. Kornman Company.[9] *Id.* at 798.

This lengthy history brings us to the current case. It was filed in October 2004 and offers a new twist. Metro had previously claimed not to have any interest in the property due to its 1958 quitclaim deed to the State. Yet, Metro built the Gay Street Connector, which goes under the Victory Memorial Bridge beside the Cumberland River over a portion of the easement acquired from the plaintiffs' predecessor-in-interest. The plaintiffs also claim ownership of property immediately west of the Gay Street Connector.[10] When Metro changed the use of the property near the courthouse from a parking lot to an entrance of an underground garage, the plaintiffs allege that Metro blocked access to the property owned by the plaintiffs located between the courthouse and the Gay Street Connector.[11] These actions, the plaintiffs claim, constitute trespass. Furthermore, they argue that Metro's actions are a taking of their property without just compensation which unjustly enriches Metro. The plaintiffs seek a judgment against Metro for the reasonable rental value of the property during Metro's use and occupation of it, based on an implied promise to pay.

Metro, after answering and discovery, filed a motion for summary judgment claiming that (1) Metro's actions do not constitute a taking, (2) "equity does not support requiring Metro to pay Plaintiffs in light of the state's pervasive easement on the property at issue and

---

[9]The Court of Appeals also quoted from *Kornman I's* holding that the owners of the land had been paid full compensation for the fee. It appears that the Court of Appeals was suggesting that the holding in the first case precluded the case before it: "after there has been a legitimate fair compensation paid for the property even though taken for an easement when there is an alleged abandonment of that easement afterwards the State should not have to defend that suit without its consent to it." *Kornman III*, 417 S.W.2d at 798 (quoting *Kornman I*, 360 S.W.2d at 35); *see supra*, note 8.

[10]Plaintiff's [sic] Response to First Set of Interrogatories and Requests for Production of Documents, answer to question 10(B), filed November 16, 2007.

[11]Plaintiff's [sic] Response to First Set of Interrogatories and Requests for Production of Documents, answer to question 15, filed November 16, 2007.

the City of Nashville's previous payment to the plaintiffs," (3) Metro's actions are permitted by the 1951 easement, (4) the statutes of limitation for inverse condemnation, unjust enrichment and injunctive relief to recover land bar Plaintiffs' claims, (5) Metro now owns the property by adverse possession, (6) the doctrines of res judicata and collateral estoppel bar the plaintiffs' claims in whole or in part, and (7) the doctrine of laches bars the plaintiffs' claims.

The trial court granted summary judgment, finding that Metro "has negated essential elements of Plaintiffs' claims because of the pervasiveness of the State of Tennessee's easement on the property at issue and the fact that the State of Tennessee has not abandoned the property at issue." A motion for a new trial or to alter and amend the trial court's order granting summary judgment was denied. Plaintiffs appealed.

STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.04. Summary judgments do not enjoy a presumption of correctness on appeal. *BellSouth Adver. & Publ'g Co. v. Johnson,* 100 S.W.3d 202, 205 (Tenn. 2003). We consider the evidence in the light most favorable to the non-moving party and resolve all inferences in that party's favor. *Godfrey v. Ruiz,* 90 S.W.3d 692, 695 (Tenn. 2002). When reviewing the evidence, we must determine whether factual disputes exist. *Byrd v. Hall,* 847 S.W.2d 208, 211 (Tenn. 1993). If a factual dispute exists, we must determine whether the fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial. *Id.; Rutherford v. Polar Tank Trailer, Inc.,* 978 S.W.2d 102, 104 (Tenn. Ct. App. 1998). To shift the burden of production to the nonmoving party who bears the burden of proof at trial, the moving party must negate an element of the opposing party's claim or "show that the nonmoving party cannot prove an essential element of the claim at trial." *Hannan v. Alltel Publ'g Co.,* 270 S.W.3d 1, 8-9 (Tenn. 2008).

ANALYSIS

On appeal, the plaintiffs maintain "that (1) they have the right to the beneficial use of the land so long as that use does not interfere with the state's right to the use of the bridge; and (2) that the state does not have the right to license or authorize the defendant to use the property for its purposes." Metro contends that an easement for street purposes is very broad and leaves the owner of the land a naked title only, with no rights to beneficial use of the property.

The strip of land

The plaintiffs say that they should be allowed to have access to and use of a strip of unused land that runs near the courthouse, by the bridge, down the embankment, across the Gay Street Connector and down the riverbank to the river. This would be the same strip of land alleged to have been abandoned in the prior lawsuits. *See* discussion *supra*. We think the instant case is governed by *Kornman III*. As previously discussed, in that case, the plaintiff had attempted to assert an interest in the strip of land between the bridge and the Riddle Building.[12] *Kornman III*, 417 S.W.2d at 794. The State built a fence to deny the plaintiff access to the land. *Id*. at 795. The case was then filed by the plaintiff as a reverse condemnation suit seeking damages for the fair value of property taken the second time by the State. *Id*. The premise of the suit was that the State had abandoned the property by not using it for bridge purposes, it had reverted to the plaintiff, and it had then been taken again by denying the plaintiff access to and use of the property. *Id*. at 794. The Court of Appeals held that there had been no abandonment by the State[13] and thus no reversion to the plaintiff. *Id*. at 798. Of course, this ruling precluded the possibility of a second taking.

During the course of finding no abandonment, the *Kornman III* court quoted with approval the following statement:

> It may be that in years to come the state will require an additional portion of the right-of-way in order to widen the pavement. If so, the area will be available. In the meantime, under its general power to control its highways, the state has authority to authorize any use of the right-of-way consistent with

---

[12]The former Kornman Building abutted the Riddle Building. The Riddle Building was not taken by the City when the Kornman Building and its land were acquired for the bridge. The Riddle Building and the remaining buildings on the eastern side of the Public Square were demolished in 1974.

[13]The determination that there had been no abandonment of the strip of property was based on the affirmative actions of the State in fencing the property and maintaining the property. *Kornman III*, 417 S.W.2d at 796-97. Furthermore, the court observed that mere nonuse will not constitute an abandonment. *Id*. at 796. There must be some act of the owner of the easement that clearly indicates an intent to abandon it. *Id.*

One could argue that implicit in the Court of Appeal's decision is a determination that the easement originally acquired by the city was an exclusive easement. "The owner of an exclusive easement is entitled to the free and undisturbed use of his property for the purposes of the easement, even as against the owner of the fee." *Cellco P'ship v. Shelby County*, 172 S.W.3d 574, 598 (Tenn. Ct. App. 2005) (quoting 28A C.J.S. *Easements* § 166). The *Kornman III* court had no problem with the State's denial of access to the plaintiff. A finding of an exclusive easement is consistent with the trial court's finding of the pervasiveness of the easement. Unfortunately, the original easement order is not in the record of the case before us.

the purpose of the highway and not in derogation of the rights of the public or those of the abutting landowners.

*Id.* at 797 (quoting *State ex rel. Phillips v. Smith*, 241 S.W.2d 844, 847 (Tenn. Ct. App. 1950)). Under this legal authority, the State can allow Metro to have vehicular access from the courthouse area to the bridge and vice versa. The strip of land has not been abandoned. Its use is not inconsistent with the purpose of the bridge. If the State can keep the plaintiffs off the strip of land by building a fence, as permitted in *Kornman III*, 417 S.W.2d at 796-97, the State can allow Metro to block access to the strip of land with its parking facility. Thus, Metro's use of the area is not a trespass, a taking, or the basis of unjust enrichment. It is a permitted use of the State's right of way acquired "for public highway and street purposes."

The Gay Street Connector

The Gay Street Connector goes under the Victory Memorial Bridge beside the Cumberland River over a portion of the easement acquired from the plaintiffs' predecessor-in-interest.[14] The Tennessee Department of Transportation approved the plans, and the Metropolitan Development and Housing Agency oversaw its construction. The Gay Street Connector was completed before 1984. The plaintiffs claim that Metro's use of part of the Kornman property for a portion of the Gay Street Connector is without their permission and is, therefore, a trespass, a taking of their property without compensation, or an unjust enrichment.

Once again, we need only refer to the language of *Kornman III*: "under its general power to control its highways, the state has authority to authorize any use of the right-of-way consistent with the purpose of the highway and not in derogation of the rights of the public or those of the abutting landowners." *Kornman III*, 417 S.W.2d at 797 (quoting *State ex rel. Phillips v. Smith*, 241 S.W.2d at 847). The State authorized Metro to build the Gay Street Connector on its easement, which is "for public highway and street purposes." The Gay Street Connector is consistent with the purposes of the easement and does not interfere with the Victory Memorial Bridge.[15] The construction and use of the Gay Street Connector cannot supply a basis for a trespass, a taking, or an unjust enrichment claim because Metro was authorized by the State to construct and use it on a part of the State's easement.

---

[14] The Kornman Building property extended to the mean low water line on the west bank of the Cumberland River. *See* Amended and Supplemental Complaint, Exhibit A.

[15] In fact, it can be argued that the Gay Street Connector is a valuable roadway that diverts north and south bound traffic out of the Public Square area, thus assisting the east-west traffic flow on James Robertson Parkway and the Victory Memorial Bridge.

CONCLUSION

Since the actions about which the plaintiffs complain are permitted uses of the State's easement, they cannot serve as the basis of a trespass, a taking, or an unjust enrichment claim. The plaintiffs cannot prove their claims at trial. Therefore, we affirm the trial court's grant of summary judgment to Metro.

Costs of appeal are assessed against the plaintiffs/appellants, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE