IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 9, 2002 Session

## FRANK G. PORTER, ET AL. v. RALPH H. FREEDLE, ET AL.

**Direct Appeal from the Chancery Court for Robertson County**
**No. 15619      Honorable Carol Catalano**

---

**No. M2001-01892-COA-R3-CV - Filed June 18, 2002**

---

This appeal involves a dispute over a roadway easement and interests in the use of a spring and springhouse. The chancery court determined that appellants abandoned the interest in the roadway easement and access to a spring and springhouse and dismissed appellants' suit for an injunction. Appellants challenge the chancery court's decision that the rights were abandoned. As discussed below, we affirm the judgment of the chancery court that there was clear, unequivocal evidence that appellants abandoned any interest.

**Tenn.R.App.P. 3(a) Appeal as of Right; Judgment of the Chancery Court Affirmed.**

WALTER C. KURTZ, SP. J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and WILLIAM C. KOCH, JR., JJ., joined.

William R. Goodman, III, Springfield, Tennessee, for appellants, Frank G. Porter and Frank G. Porter Family Limited Partnership

John R. Bradley, Portland, Tennessee, for appellees, Ralph H. Freedle and E. V. Freedle

### OPINION

This is an appeal by Frank Porter and Frank G. Porter Limited Partnership challenging the ruling of the chancery court which determined that Mr. Porter abandoned his rights to use a roadway, spring, and springhouse. The issue before us is:

Whether the chancery court erred in ruling that appellants abandoned the interests granted to appellants' predecessors in title in a roadway easement, spring, and springhouse located on the appellees' property.

1

## I. Facts and Procedural History

The parties here are adjoining landowners. Many years ago there were several houses, including the Buntin house, located behind Mr. Ralph Freedle's property. In 1933 the Chancery Court of Robertson County granted the Buntins and their descendants in title the "privilege" to build a springhouse and use the spring located on the Freedle property. The chancery court also granted the Buntins and others "an easement of right-of-way" for a thirty (30) foot roadway, which in 1933 gave them access to houses as well as the spring and springhouse located on the Freedle property.[1] The spring, springhouse, and roadway were actually on the property owned by Mr. Freedle's predecessors in title, who were also Freedles.

The Buntins sold their property to Mr. Porter in 1973 and he built a new home in 1974. In 1974 Mr. Porter placed debris from an old house along with dirt and other materials in a portion of the roadway. This material made a portion of the roadway impassable. In 1979 Mr. Porter constructed a fence on the south side of the roadway. With a fence on the north side already in existence, the roadway and spring were fenced on each side. A gas pipeline was constructed across the roadway at some point. While Mr. Porter never drove the entire length of the roadway, he does contend that he used it to gain access to the spring and springhouse as a water source. Mr. Porter stopped using the spring and springhouse between 1986 and 1991 when he began to use city water and, thereby, stopped using the remaining portion of the roadway. At one point, Mr. Freedle placed a lock on the springhouse and a key was never given to Mr. Porter.

Over the years, it appears that the property line became unclear and several fences were constructed on or near the roadway and spring. However, the record is clear that the roadway, spring, and springhouse were always located on the Freedle property. In August of 2000, the appellee, E.V. Freedle, nephew and successor in title to Ralph Freedle, constructed a fence on the south side of the roadway, immediately next to a fence constructed by Mr. Porter. The fence continues across the roadway which entirely prohibits Mr. Porter's use of the roadway.

Mr. Porter filed an action in the Chancery Court of Robertson County on August 24, 2000, seeking an injunction requiring the Freedles to remove the new fence which blocked the roadway and access to the spring and springhouse. The Freedles asserted that Mr. Porter had abandoned any interest in the roadway, spring, and springhouse and, alternatively, the easement had been lost by adverse possession. The chancery court heard the case on May 15, 2001. On June 27, 2001, the chancery court entered a final order dismissing the action finding that the appellants had abandoned any interest in the roadway, spring, and springhouse. Mr. Porter appeals that final order.

---

[1] Needed access to the other houses has long ago been eliminated as no one has used the roadway to get to a house since before World War II. The record is unclear as to how access is now gained to the other property. Further, appellants have asserted no claim that this roadway is still needed to get to other property or homes.

## II.  Standard of Review

Appellate review of a trial court's decision is de novo upon the record accompanied by a presumption of correctness of the findings unless the preponderance of the evidence is otherwise. See Tenn. R. App. P. 13(d).  This Court may only overturn the judgment of the trial court if there was an error of law or unless the preponderance of the evidence is otherwise.

## III.  Discussion

The chancery court concluded that Mr. Porter had abandoned his interest in the roadway easement and his interest in the use of the spring and springhouse and we agree.  While it is apparent that Mr. Porter had not used the roadway or spring for a significant period, he also took affirmative actions indicative of the abandonment of his interest.  The affirmative actions of Mr. Porter coupled with the extensive time of nonuse show an intent to abandon and abandonment of the property by clear, unequivocal evidence.

In its final order of June 27, 2001, the chancery court concluded:

1.  The Plaintiffs have abandoned any claim to the right of way easement they sought to establish in this litigation; Mr. Porter's dumping of debris in the roadway in 1974, along with the fact he nor anyone else has used the property as a roadway during his ownership of the adjacent property, provides clear and convincing proof of abandonment of the easement; any right to use the easement has been lost by abandonment.

2.  The Plaintiffs have abandoned any claim to the Freedle's spring, which Mr. Porter and his family stopped using ten to fifteen years ago; the Plaintiffs did nothing to gain access years ago when a key was refused, and only brought this litigation as a result of a fence being built; any right to use the Freedles' spring has been lost by abandonment.

The fact that Mr. Porter did not use the roadway or spring for any period of time does not, in itself, prove abandonment.  The fact that a party does not choose to exercise an interest does not extinguish the right.  An overt act indicative of abandonment must accompany the nonuse.

[T]he burden of proving abandonment is upon the party asserting it.  The abandonment must be established by a clear and unequivocal evidence of decisive and conclusive acts.  A mere nonuser will not amount to abandonment of an easement, but there must be some positive showing of an intention to abandon.  Time is not an essential element of abandonment, and is of no importance except as indicative of intention.

3

Jacoway v. Palmer, 753 S.W.2d 675, 679 (Tenn. App. 1987). This intent to abandon "[m]ay be proved with evidence of acts clearly indicating that the easement holder desires to lay no further claim to the benefits of the easement." Hall v. Pippin, 984 S.W.2d 617, 621 (Tenn. App. 1997).

> Abandonment may be proved by either a single act or a series of acts. See Smelcer v. Rippetoe, 24 Tenn. App. 516, 522, 147 S.W.2d 109, 113 (1940). When called upon to determine whether the holder or holders of an unrecorded easement intended to abandon the easement, the courts may consider: (1) statements by the easement holder acknowledging the easement's existence and disavowing its use, (2) the easement holder's failure to maintain the easement in a condition permitting it to be used for access, (3) the easement holder's acquiescence in the acts of others that reduce the utility of the easement, (4) the easement holder's placement of a permanent obstruction across the easement, or (5) the easement holder's development of alternative access in lieu of the easement.

Id.[2]

Therefore, the primary issue is whether the chancery court had sufficient evidence before it that Mr. Porter committed overt acts, coupled with other factors related to nonuse, indicating the abandonment of his interest. We believe the court had such evidence.

The chancery court noted sufficient evidence that preponderated in favor of abandonment of the interests in the roadway, spring, and springhouse. Again, the June 27, 2001, final order states:

> 3. Frank Porter built a new house on his property in 1974, shortly after purchasing it from the Buntins; he put debris from an old house in the old roadway making a portion of the roadway impassable; he used a small area of the roadway to get to the spring.
>
> 4. Mr. Porter has never driven on the claimed roadway, being aware of a gas pipeline which goes across the roadway, and being aware of the debris he placed in the roadway, as well as other debris placed on top of his debris.
>
> 5. Mr. Porter stopped using the area of the roadway adjacent to the spring ten to fifteen years ago when he began using city water.
>
> 6. The only time Mr. Porter has been in the roadway area in many years was when he removed a tree that had fallen from his property onto the Freedle property, at the

---

[2] While these factors were applied in relation to an unrecorded easement, we believe the same factors should also be considered when considering the abandonment of a recorded easement.

4

request of E.V. Freedle.

7. Mr. Porter was aware that there was a lock on the spring for several years before filing his complaint on August 24, 2000, and he should have demanded a key years ago, if he desired access to the spring.

8. Photographs . . . show there has been no road use in many years, there being green grass where Mr. Porter claimed the road to be, requiring the use of imagination to see a roadway.

Mr. Porter certainly abandoned a portion of the roadway when he placed debris in it in 1974. While Mr. Porter has stated that he placed these items there to build up or add support to the roadway, the photographs give little support to that assertion. The debris and portions of the old house completely prohibit travel through the roadway. The debris was obviously disposed of in the roadway to remove it from Mr. Porter's property. The placement of the debris was an overt act indicating that Mr. Porter did not desire to use that portion of the roadway. Mr. Porter also acquiesced to the Freedles placing debris on top of that deposited by him.

Mr. Porter also abandoned the remaining portion of the roadway along with his interests in the spring and springhouse. Mr. Porter allowed, without objection, a gas pipeline to be installed and a lock placed on the springhouse. While any of these items are not determinative as to abandonment, Mr. Porter's acquiescence to these acts is a factor. The record contains no evidence that he objected to these acts, all of which would affect his use of the roadway easement, spring, springhouse. Also, the roadway easement had not been used as a means for travel for some time. The chancery court heard testimony that Mr. Porter had never driven the entire distance of the roadway. Also, he had not been on the property for a significant period of time except to remove a tree at Mr. Freedle's request. The removal of the tree was unrelated to the use of the roadway. The evidence, including the photographs, showed that the roadway had become covered in grass and overgrown by vegetation. While the extensive period of nonuse cannot be determinative in itself, it is significant to support the intent to abandon.

While the record is unclear as to the exact reason for the original roadway easement, it appears that it was granted to both allow access to the properties behind the Freedle property and allow access to the spring and springhouse. Mr. Porter made a portion of the roadway impassable in 1974. However, he still used a portion to gain access to his water source. He then stopped using the spring. The record contains evidence that Mr. Porter began to use city water some time ago, possibly as long as fifteen (15) years ago. His conscious decision to use the city water was another act indicating that he intended to abandon his use of the spring and springhouse along with the roadway easement as he no longer required the water. While there is some indication that the roadway easement was at one time used to access other homes and Mr. Porter's property, the evidence in the record indicates that Mr. Porter's use was related to the ability to get to the spring and springhouse. The chancellor was correct that he abandoned his interest in these interests by utilizing another water source and acquiescing to acts which interfered with his use.

5

The chancery court had clear, unequivocal evidence before it to determine that Mr. Porter abandoned all his rights.  His nonuse coupled with the overt acts of placing debris in the roadway and utilizing an alternative water source preponderates in favor of the abandonment.

## IV.  Conclusion

For the aforementioned reasons, the decision of the chancery court dismissing the action is affirmed.   Costs of this appeal are taxed to the appellants for which execution may issue if necessary.

_____
WALTER C. KURTZ, SPECIAL JUDGE

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 9, 2002 Session

# FRANK G. PORTER, ET AL. v. RALPH H. FREEDLE, ET AL.

**Direct Appeal from the Chancery Court for Robertson County**
**No. 15619      Honorable Carol Catalano**

---

**No. M2001-01892-COA-R3-CV**

---

## JUDGMENT

This cause came on to be heard upon the record on appeal from the Chancery Court for Robertson County, the briefs of the parties, and the arguments of counsel. Upon consideration of the entire record, this Court finds and concludes that the chancery court's judgment should be affirmed

In accordance with the opinion filed contemporaneously with this judgment, it is, therefore, ordered, adjudged, and decreed that the chancery court's judgment be and is hereby affirmed, and that the cause be remanded to the chancery court for further proceedings consistent with this Court's opinion.

It is further ordered that the costs of this appeal be taxed to Frank G. Porter, principal, and Goodman & Walker, surety, for which execution may issue if necessary.