SMELCER et al. v. RIPPETOE., No. 2.—147 S. W. (2d) 109.

Eastern Section. August 3, 1940.

Petition for Certiorari denied by Supreme Court, February 1, 1941.

518

Kilgo & Armstrong, of Greeneville, for appellants.

Milligan & Haynes and Susong, Parvin & Fraker, all of Greeneville, for appellee.

AILOR, J. Complainants filed their original bill in this cause for the purpose of permanently enjoining the defendant from repairing and maintaining a dam across Lick Creek in Greene County. There are nineteen complainants to the bill, and they claim that they own lands on said creek which they claim would be irreparably damaged by the repairing and maintenance of said dam. It is their insistence that defendant has not acquired any right to construct or maintain the dam complained of, and that they are entitled to have same permanently enjoined because of the nature of the damages resulting therefrom.

Defendant filed his answer in which he set up a prescriptive right to maintain the dam complained of; he alleged that a dam had been maintained at the site in question for many years before 1893, at which date the then existing dam was removed and a new one constructed to provide power for manufacturing flour, meal, etc.; that a building four stories in height had been constructed in 1893 and equipped with machinery and had been in use as a mill from the time it was constructed; that the wooden dam was removed in 1914 and replaced with a concrete dam which was used until 1929, when it was partially destroyed by explosives. It was denied that the right to continued use of the dam had been lost by non-user or otherwise, and it was denied that complainants were entitled to any relief in this cause. The answer averred that a dam had been maintained at the point in question for a period of a hundred years, and that the right to maintain the same was given by proper grant. Defendant specially pleaded estoppel on the part of complainants to question his right to construct or repair the dam.

Upon the hearing of the cause the Chancellor found the material issues in favor of defendant and dismissed complainants' bill, but on application of complainants the injunction was continued in force pending disposition of appeal to this court which was granted. Complainants have perfected their appeal and have assigned errors to the decree entered against them. Numerous errors have been assigned by appellants, and defendant has also assigned error to the failure of the Chancellor to respond to the defense of estoppel. We think it not necessary to deal with errors assigned in the order of their assignment, but we treat the questions raised which are determinative of the issues.

Prior to 1893 J. W. McDonald and William Wisecarver purchased the mill site in question and the property adjacent thereto. At the time they purchased the property a mill was being operated at the site, known as the "McDonald Mill." It later became known as the "Harmon Mill." In 1893 there was a dam across Lick Creek at the

place in question and being used to generate power for the operation of the mill. The record discloses without controversy that a dam had been maintained at the point for so long that the oldest living residents of the community could not remember when it was first constructed. The history of the community is to the effect that it has been in existence for around a hundred years.

McDonald and Wisecarver replaced the old dam in use at the time they purchased the property with a new wooden dam in 1893. This was continued in use until 1914, at which time Andy Harmon had become the owner of the property along with T. E. McDonald. These new owners decided to improve the property by constructing a concrete dam in place of the then old wooden dam. This concrete dam was continuously used from the time it was constructed until 1929, when it was partly destroyed by an explosion. In the meantime, in 1919, Neal Harmon had become the owner of the property by purchase. In 1925, Neal Harmon and wife executed a trust deed on the property to secure T. E. McDonald and Andy Harmon in the sum of $25,000. This trust deed was foreclosed in 1935, at which time T. E. McDonald and Andy Harmon became the purchasers at the foreclosure sale. E. T. Rippetoe, defendant in this suit became the owner of the property by purchase from McDonald and Harmon on November 8th, 1937. Soon thereafter he began repairs on the mill property and the dam with intention to place it into operation again.

The Chancellor found that the dam had been in existence and in continuous use for more than fifty years. This finding is practically undisputed and is supported by an overwhelming preponderance of the proof. And he further found that it had been recognized as a place where a grist mill and saw mill had been operated for approximately a hundred years. This enterprise had grown until a very substantial building four stories high had been built to accommodate the business developed. Photographs in the record indicate that it is a very substantial enterprise, and the proof shows that it is well equipped with machinery for manufacturing meal and flour. The Chancellor further found that backwater from the dam during high tides had been flooding the lands of many of complainants since 1893, and that damages had resulted therefrom from that date to the time the dam was blown up all within the knowledge of complainants; but that the dam had been maintained in the face of these complaints and objections for more than twenty years, and that no action had been taken to prevent the damages now complained of. He specifically found that complainants took no action when the new dam was constructed in 1893, when the concrete dam was constructed in 1914, and not until defendant in this case had expended a considerable sum of money to replace the dam partly torn out by explosives. All of these findings are well supported by the proof and we concur in same.

The proof is that the concrete dam was constructed the same height of the older wooden dam as originally constructed, through the wooden dam was about eighteen inches low in the middle of the stream. Plans of defendant for repairing the concrete dam called for a dam something like two feet lower than that of the concrete dam. We, therefore, find that defendant had acquired a prescriptive right to flood the lands of complainants by the uninterrupted maintenance of a dam at the place in question for more than twenty years; that the height to which said dam may be maintained is the level of the concrete dam constructed in 1914, a portion of which remains so it may be easily determined to what level the repairs may be made. A prescriptive right to flow lands of another by a dam is acquired by uninterrupted use, under a claim of right, for twenty years. Harmon v. Carter (Tenn. Ch.), 59 S. W., 656.

It is insisted on behalf of complainants that there is no proof that there was any adverse claim by defendant or his predecessors in title. We think no positive proof in this connection is necessary. The construction of a dam across a creek and the maintenance of same for a period of twenty years and more is by the very nature of the thing adverse to the rights of all parties who are injured thereby. A four-story building fully equipped with machinery for the manufacture of meal and flour was entirely dependent upon the right to use the dam in question. It was so open and notorious as to constitute notice of itself that the claim was adverse to all parties apt to be damaged by the existence of the dam. We can think of no more adverse claim to maintain the dam than the fact that it was constructed and maintained on so large a scale for so long a time. This fact speaks louder and more convincingly than an unlimited number of personal witnesses could do. People are disposed to stray from the truth at times, but physical facts such as are demonstrated in this case do not lie and are not subject to be explained away by testimony, unless such testimony is clear and convincing that the dam was being maintained by consent of the parties. There is no such proof in this case, and it is necessary to conclude that the dam was maintained for more than twenty years under adverse claim of right, and that it operated to vest a prescriptive right to continue the maintenance of same.

It is next insisted that such rights as might have been acquired were lost by abandonment. This insistence is based upon the fact that the dam was not used from October, 1929, to the time this suit was instituted. And it is true that the dam was not in use during this time, but this resulted not from any voluntary abandonment of the use of the dam and the mill property, but from the fact that a portion of the dam was blown out by an explosion, presumably of a criminal nature. The mill property was heavily mortgaged at the time and the proof indicates that Mr. Neal Harmon, owner of the

property, was not financially able to make the necessary repairs to put the mill back into operation. In fact he lost the property through foreclosure in 1935, and defendant purchased it in 1937. He immediately began restoring the mill property upon acquiring same, and was ready to begin rebuilding the dam when this suit was filed. There is no proof of any intention to abandon the dam or discontinue the use of the milling enterprise. The interval between 1929 and the institution of this suit during which the dam was not suitable for use, under the circumstances, was not sufficient of itself to indicate any intention to abandon the dam or the right to maintain it.

There is no proof in this record connecting any of the complainants with the blowing up of the dam, but it is reasonable to infer that it was blown up by some one dissatisfied with its maintenance. There is nothing in the record to indicate that any parties other than complainants were being injured by the presence of the dam, from all of which it might be concluded that some of them might have been sympathetic with its elimination. However, it is not necessary to impute wrongdoing to any of complainants. It is sufficient to say that there was no voluntary abandonment of the dam, and no proof of any intention to abandon is so as to result in a loss of the right to maintain same. There is not any substantial proof of any intention to abandon the use of the dam. Its use was interrupted for awhile on account of no fault of defendant or any of his predecessors in title. The mere fact that there was some delay in restoring the dam is no indication of an intention to abandon it. Therefore, this insistence must be resolved against complainants.

In this connection it is insisted that Neal Harmon told several parties that he did not intent to rebuild the dam after it was blown up, and that this was sufficient evidence of abandonment. We think this fact would not be controlling. Neal Harmon was not in position to foreclose the rights of McDonald and Harmon to whom he had executed a mortgage on the property by an admission that he did not intend to rebuild the dam. Neal Harmon was in strained financial circumstances, and was possibly not able to rebuild the dam. But assuming that he made the statement attributed to him, still it was not sufficient to divest him of the right to rebuild it. He could have meant that he intended to permit a foreclosure of the mortgage, which would carry with it all of the rights he had including the right to rebuild the dam. At any rate his statement was not inconsistent with the rights of the beneficiaries under the mortgage to rebuild the dam on foreclosure, and it was not sufficient to divest them of the right to do so. This right was passed on to defendant upon his purchase of the land, and it makes no difference as to the amount he paid for same.

"Divestiture of a vested legal title by 'abandonment' is unknown at common law, unless it result from some estoppel or adverse posses-

sion." Southern Coal & Iron Co. v. Schwoon, 145 Tenn., 191, 225, 239 S. W., 398, 409.

"The primary elements of abandonment are the intention to abandon and the external act by which the intention is carried into effect. The intention to abandon is considered the first and paramount inquiry. Abandonment may arise from a single act or from a series of acts. Time is not an essential element of abandonment, and is of no importance except as indicative of intention." 1 Am. Jur., p. 6 and 7, sec. 8.

The Supreme Court of this State speaking on this question said: "Indeed, in order to justify the conclusion that there has been an abandonment, there must be some clear and unmistakable affirmative act indicating a purpose to repudiate the ownership. This was the substance of the decision of the court upon this point in Woods v. Bonner, 89 Tenn., 411, 414, 415, 18 S. W., 67. . . ." Phy v. Hatfield, 122 Tenn., 694, 126 S. W., 105, 135 Am. St. Rep., 888, 19 Ann. Cas., 374.

■ And it has been repeatedly held that a mere nonuser will not amount to abandonment of an easement, but that there must be some positive showing of an intention to abandon. Boyd v. Hunt, 102 Tenn., 495, 52 S. W., 131.

■ After Neal Harmon had conveyed the property in trust he could not abandon the easement so as to bind those claiming under him by a subsequent act, assuming that the proof is sufficient to indicate that he intended to abandon it. Byram v. McDowell, 83 Tenn. (15 Lea), 581, 588.

■■ It is further insisted that the dam was not an appurtenance to the property at the time defendant purchased same, and for that reason he had no right to construct same. We think this position is not tenable in the light of the facts in this case. At the time of the conveyance to defendant a very substantial portion of the dam was intact in the creek. Photographs in the record, especially Exhibit "F" to the testimony of defendant indicate that only a small portion of the dam was blown away by the explosion and that the major portion of it remained. Defendant had lived in the immediate community for a period of twenty-nine years at the time he gave his deposition in the cause. He knew the fact that the mill had been in existence for all of this time, knew of the location and condition of the dam, and was familiar with the fact that it was in disuse because of the explosion of a criminal nature. He knew that all of the footing or foundation of the dam was still there, and that it could be repaired at a small cost. But complainants insist that defendant only took such easement as was actually in use at the time of the deed to him. They cite the rule laid down in Cox v. Howell, 108 Tenn., 130, 144, 65 S. W., 868, 871, 58 L. R. A., 487, as follows: "When the defendant sold to complainant his right and interest in the mill, it carried with

it all the easements and appurtenances necessary to its operation as they existed when the sale was made,'' as supporting the insistence that the easement could only be used as it existed at the time of sale to defendant. This is not the meaning of the rule of law relied upon. Defendant took the appurtenance with the right to use the easement to the full extent of the right acquired by maintenance of the dam or dams for the full prescriptive period of twenty years, and not the mere right to use the remnants of the dam as they existed after the explosion. The easement itself was one thing and the present state of the dam was another. The condition of the dam was naturally subject to deterioration and in need of repairs. Complainants' position would, in effect, prohibit the making of repairs of the dam, if followed to its logical conclusion. But we think this is not the law. The easement that is the right to maintain the dam to the height of the concrete dam, had become an appurtenance to the land at the time the trust deed was placed on the property by Neal Harmon. This right was preserved through the trust deed, the trustee's deed to McDonald and Harmon, and their deed to defendant, regardless of the actions of Neal Harmon. And this was true whether or not the deeds actually mentioned the easement. 9 R. C. L., p. 60, and 408.

 In the sixth assignment of error appellants renew the insistence that there is no showing in this case that the dam was being maintained adversely. Numerous cases are cited in support of the contention made in this connection. We have examined the authorities cited and think it necessary to conclude that they are not in point. We have concluded that the existence of a dam at the location in question since 1893, with the conseqent damages to lands above the dam from back-water shown to have resulted, is of itself a sufficient showing to establish a prescriptive right without any specific evidence that the dam was maintained adversely. It would be presumed that such land owners would not permit the continuation of such damages over so long a period of time, if they could legally prevent it. After the lapse of so long a time, taking into consideration the fact that the record discloses that a mill had been maintained at this location for about a hundred years, it would be impossible to show the conditions under which the dam was first maintained for the prescriptive period. But the parties now complaining and their predecessors in title, having stood by for so long a period of time without complaint, they are in no position to raise this question at this time. The maintenance of the dam was so inconsistent with the full use of the land of complainants that it will be presumed to have been adverse in the absence of a showing to the contrary.

 It is further insisted that the Chancellor erred in excluding certain testimony tending to show that Neal Harmon made statements indicating an intention to abandon the easement. We have already dealt with the question raised, and have concluded that Neal

Harmon was not in position to bind McDonald & Harmon to whom he had given a trust deed by any admissions. We are of the further opinion that the alleged admissions were not sufficient in law to constitute an abandonment of the easement. Assuming that he stated he was not going to rebuild the dam, still that was not sufficient under the circumstances to constitute an abandonment of the right to do so.

It is next insisted that there is no showing that the possession of defendant and his predecessors in title was adverse to the rights of complainants while all of them were free from disability to resist such claim. Under the state of the proof in this case it will be presumed that all of the owners of the property were free from disability. The Supreme Court of this State has repeatedly held that the burden of proof to establish an exception to the operation of the Statute of Limitations is upon him who asserts it, and that a right of prescription is similar to one acquired under the Statute of Limitations. It has even been held that this defense must be specially pleaded in order to be available, and that when it is shown that there has been an adverse user for a period of twenty years, it will be presumed that the owner of the land was capable of suing or acquiescing in the prescription. Davis v. Louisville & N. Ry., 147 Tenn., 1, 244 S. W., 483; Ferguson v. Prince, 136 Tenn., 543, 190 S. W., 548; Jones v. Coal, etc., Co., 133 Tenn., 159, 180 S. W., 179.

Other errors are assigned, but we think we have disposed of all of the controlling questions presented on appeal of the case. It is not necessary to deal with other questions in detail. They raise questions on details that are not controlling, and it is not necessary to consider them. We have reached the conclusion that a right by prescription was acquired by the construction of the wooden dam of 1893, and the construction of the concrete dam of 1914 and its continuation until 1929; that this right was still in existence and an appurtenance to the land at the time of the purchase of same by defendant, and passed to him under the deed of McDonald and Harmon, and that he had a right to restore the dam to the condition it was in at the time of the explosion which destroyed a portion of it. We conclude that the complainants improperly obtained an injunction restraining defendant from restoring said dam, and that they are liable to respond in damages resulting from the wrongful suing out of said injunction. The injunction will be dissolved, the decree of the Chancellor will be affirmed, and the cause remanded to the Chancery Court at Greeneville, for the purpose of fixing damages resulting from the issuance of the injunction.