# COTTRELL v. DANIEL et al.—205 S. W. (2d) 973.

Eastern Section. August 12, 1947.

Petition for Certiorari denied by Supreme Court, October 18, 1947.

J. R. Ketron, of Tazewell, for appellant.

John P. Davis, of Tazewell, for appellees.

HALE, J. This is a suit to enjoin the obstruction of an easement claimed by the owner of lands abutting upon an

abandoned public road. Defendants seem to conclude that such an easement once existed, but insist it had been abandoned in the complainant had erected obstructions across it and is now estopped from asserting a claim thereto. The Chancellor found:

"That the complainant, Lizzie Cottrell, by her failure to keep in repair and by placing or permitting the placing of obstructions across the road sought to be opened indicated an intention on her part to abandon her easement in said road, and that such acts of obstruction and failure to keep in repair constitute and abandonment of said road, or her easement over and along the same.

"It appears to the court that the road involved in this cause was at one time a public highway, maintained by the county, but many years ago the county changed said road and abandoned the one adjacent to complainant's property, along Station Creek, as a public highway, but the complainant and her predecessors in title, by virtue of their ownership of the farm now owned by complainant, acquired a special right or easement to said road as an appurtenance to said property, and that the same was not lost by the abandonment of said road by the county authorities, and the complainant and her predecessors in title were the owners of said private easement or right of way until the same was lost by complainant as a result of her failure to keep said road in repair, and placing obstructions or permitting said obstructions placed across the same."

The bill was dismissed and complainant has appealed and assigns error to this finding and decree.

C. B. Cottrell, father of the complainant and her predecessor in title, owned a tract of some 400 acres, which was adjoined on the south by the road in question and

Station Creek. This land has a steep slope down to the road. It appears that the creek and road run down a narrow defile, and it is sometimes difficult to determine which is road and which is creek. The road crosses the creek, or the creek crosses the road, some five times in their course through the C. B. Cottrell lands. This was an old, old road and at one time was a mail route, running from Shawanee to the Fork Ridge section.

In or about 1925, a new and better road was built to the south of the road in question and diverted from it the travel of the general public and mail route. Public support of the old road was withdrawn, altho at one time since then an effort was made to work it with ''free'' labor under the old road law requiring male citizens of certain ages to do work on the road. However, there were no males of this age on this stretch of road and nothing was done. For all practical purposes, the result was that the only persons in interest were the abutting owners who thus had an easement of ingress and egress to and from their premises over the old road. Current v. Stevenson, 173 Tenn. 250, 116 S. W. (2d) 1026; Jackson v. Hutton, 15 Tenn. App. 281.

The lands of C. B. Cottrell were partitioned in 1922, and the complainant (by inheritance and purchase from other heirs) acquired lands which abut on this old road. Altho she was given an easement across other lands so partitioned to reach a public road on the north, her lands do not adjoin a public road unless the road in question be termed a public road. The southern end of her lands is timbered and it appears that the only feasible way to remove this timber is over the road in dispute. Likewise, if she were to sell or build upon this southern end of the place, the road in question would be the most practical means of access.

And it might be added that, as bad as the road was when the new road was constructed, it has become much worse since then. It has been used on rare occasions. It was needed but little and used but little.

Did the complainant by failure to keep in repair, or by placing of obstructions across the road, evidence an intention to abandon it and estop her from making a claim thereto?

 In Smelcer v. Rippetoe, 24 Tenn. App. 516, at pages 521, 522, 147 S. W. (2d) 109, 113, it is said:

" 'Divestiture of a vested legal title by "abandonment" is unknown at common law, unless it result from some estoppel or adverse possession.' Southern Coal & Iron Co. v. Schwoon, 145 Tenn. 191, 225, 239 S. W. 398, 409.

" 'The primary elements of abandonment are the intention to abandon and the external act by which the intention is carried into effect. The intention to abandon is considered the first and paramount inquiry. Abandonment may arise from a single act or from a series of acts. Time is not an essential element of abandonment, and is of no importance except as indicative of intention.' 1 Am. Jur. p. 6 and 7, sec. 8.

"The Supreme Court of this State speaking on this question said: 'Indeed, in order to justify the conclusion that there has been an abandonment, there must be some clear and unmistakable affirmative act indicating a purpose to repudiate the ownership. This was the substance of the decision of the court upon this point in Woods v. Bonner, 89 Tenn. 411, 414, 415, 18 S. W. 67 . . .' Phy v. Hatfield, 122 Tenn. 694, 126 S. W. 105, 135 Am. St. Rep. 888, 19 Ann. Cas. 374.

"And it has been repeatedly held that a mere nonuser will not amount to abandanment of an easement, but that there must be some positive showing of an intention to abandon. Boyd v. Hunt, 102 Tenn. 495, 52 S. W. 131."

See also Clayton v. Wise, 1, Tenn. Civ. App. 620.

██ The burden of proving abandonment is upon the party asserting it. Moreover, the abandonment must be established by clear and unequivocal evidence of decisive and conclusive acts. 17 Am. Jur. "Easements" Sec. 142, page 1928; 28 C. J. S., Easements Secs. 58, 59.

█ The defendants own land south of the road and creek before mentioned. They have access to the new road, and it would be to their interest to close the old road so as to give them watering places therein. In fact, both the complainant and the defendants so used the old road. This was accomplished by taking out a gap in the fence paralleling the road and then swinging it, or bars, across the road and creek, thus allowing the stock of the parties to reach water.

It seems that at the beginning of this practice it was recognized by the complainant and the defendants that the other had rights in this old road and the user was more permissive than adverse.

J. C. Daniels, one of the defendants, testified that he, at the instruction of the complainant, built a solid fence across the road. He is somewhat hazy as to the date. He is corroborated by his wife. However, the complainant and her sister testify that Daniels was instructed merely to make a watering place and that when she found the road had been fenced in, she instructed him to take it out. Altho this fence remained there several years, it was finally taken out by Daniels, at the instruction of complainant, who paid therefor. On the whole,

we are unable to find the "clear and unequivocal evidence of decisive and conclusive acts" (17 Am. Jur., supra) required in cases of this sort.

Defendant Vannoy put in a gap or bars across the road that "anybody could take it down and put it back," and said, "I put it in by Lizzie's consent." Defendant J. C. Daniels said, "Lizzie had agreed for me to have a watering place." Defendant Ramsey testified that he told the complainant's sister Bessie, that whatever complainant and Daniels "agreed on I would do."

We are forced to conclude that these obstructions of this road were temporary and permissive in their nature and did not constitute an abandonment.

■ "Mere nonuser of an easement does not raise a presumption of abandonment, especially where it is not continuous for the time required for the perfection of an easement by prescription. Abandonment occurs, however, when nonuser is accompanied by acts clearly evidencing an intention to abandon." 28 C. J. S., Easements, Sec. 60.

■ There is evidence that the complainant built or caused to be built an obstruction or dam across the road so as to divert water upon one of the defendants' land to flood his spring. This was cut out by him. She and her witnesses claim it was erected where a break had formerly existed and was done to protect rather than to injure the road or to flood the spring. Be this as it may, a petty or malicious act done to flood the spring should not be used as evidence of a purpose to abandon the road, especially where the defendant claimed and immediately exercised the right to remove the alleged obstruction.

■ We realize that it would be desirable from the defendants' viewpoint to have this easement done away with, but we are dealing with fixed and settled property rights. Altho complainant does not need this easement, she has a right to exercise it if she so desires.

We need not discuss the applicability of Sec. 2956 of the Code authorizing gates across roads of certain classes, as that question is not before us. Current v. Stevenson, supra.

On the whole, we are constrained to reverse the decree below and enter decree her for complainant with costs.

McAmis and Burnett, JJ., concur.