IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 9, 2002 Session

## HENRY WATSON, AND WIFE, EVELYNE WATSON v. L.B. BALL, AND WIFE, WILMA ROSE BALL, AND JOE BROWDER, AND WIFE, GAIL BROWDER

Appeal from the Chancery Court for Polk County
No. 6804     Jeri S. Bryant, Chancellor

<u>FILED FEBRUARY 25, 2003</u>

No. E2002-00072-COA-R3-CV

---

A Chancery Court judgment was entered in 1980, providing Henry Watson and Evelyne Watson ("the Watsons") an easement across land currently owned by L.B. Ball and Wilma Rose Ball ("the Balls"). The judgment held the Watsons had acquired an easement "for the purpose of providing ingress and egress for farm equipment only and for no other purpose." The Watsons did not use the easement or take any steps to prepare it for use for nearly twenty years. In 1999, the Watsons began construction of a road within the easement. Joe Browder and Gail Browder ("the Browders"), owners of adjoining property, placed a gate across the easement. The Watsons sued for injunctive relief. Trial was held and an order was entered on May 14, 2001, holding, *inter alia,* the easement had not been abandoned and that the Balls were not entitled to damages for destruction of trees within the easement. In response to the Balls' motion for additional findings of fact, an order was entered on November 13, 2001, that provided a definition of "farm equipment." The Balls appeal. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and CHARLES D. SUSANO, JR., J., joined.

Bert Bates, Cleveland, Tennessee, for the Appellants, L.B. Ball, and wife, Wilma Rose Ball.

Robert B. Wilson, III, Cleveland, Tennessee, for the Appellees, Henry Watson, and wife, Evelyne Watson.

# OPINION

## Background

In 1979, the Watsons sued the Balls' predecessors in title in Chancery Court for the purpose of establishing a boundary line between adjoining property. A judgment was entered on February 22, 1980, holding, *inter alia,* that the Watsons had a limited easement eighteen feet wide over the property belonging to the Balls' predecessors in title "for the purpose of providing ingress and egress for farm equipment only and for no other purpose." The judgment further stated construction and maintenance of a roadway within the easement would be solely at the Watsons' expense. The easement lies on the Ball property along the boundary line of the Browders' property.

The Watsons took no action to use the easement or to prepare it for use for nearly twenty years. Henry Watson testified he did not use the easement during those years because he suffered a series of misfortunes including a bout with cancer; the burning of his home, barn and equipment; and a tractor accident that left him bedridden and wheelchair bound for a couple of years.

In 1999, the Watsons began to construct a road over the easement. The Browders erected a gate across the easement. The Watsons filed suit seeking injunctive relief and a temporary restraining order claiming L.B. Ball and Joe Browder had threatened to kill Henry Watson. The Balls answered the complaint and pled as an affirmative defense that the Watsons had abandoned the easement. The Browders answered the complaint and counterclaimed, *inter alia,* that Henry Watson had trespassed on their land. The Balls then filed an amended answer and counter-complaint. The Balls' counter-complaint alleged a portion of the roadway constructed by the Watsons encroached upon land not located within the eighteen foot easement. The Balls' counter-complaint also sought damages for the destruction of trees.

At trial, L.B. Ball testified he spoke to Henry Watson after the road was built and informed Mr. Watson the road could be used only for farm machinery. Mr. Ball testified Mr. Watson replied he wasn't "spending all this money for nothing" and he would use the road for whatever he wanted to use it for. The evidence showed Henry Watson's grandson was building a cabin close to the roadway in the easement.

Trial was held in early 2001, and an order entered on May 14, 2001, holding, *inter alia,* that the easement had not been abandoned and still was valid. The Trial Court further found portions of the roadway constructed by the Watsons were located outside the eighteen foot easement and should be relocated within the easement at the Watsons' expense. The Trial Court also held the Balls were not entitled to recover damages for the destruction of trees because the trees were located within the easement. The Trial Court's decision as to the claim against the Browders and the Browders' counterclaim is not a part of this appeal.

The Watsons filed a motion to alter or amend the judgment. The Balls filed a motion for additional findings of fact seeking a determination of what constitutes farm equipment, as the easement could be used only for farm equipment. On November 13, 2001, an order was entered amending the May 14, 2001 order to read:

> The purpose of said easement, that of providing ingress and egress for farm equipment only, shall remain unchanged. Farm equipment is deemed to include those tools, machinery, vehicles, and other devices actually used by the [Watsons], their agents and employees, for the raising of crops and livestock on [the Watsons'] land. The easement is not to be used as a means of providing ingress and egress to the property of [the Watsons], other than as stated above.

The Balls appealed to this Court.

### Discussion

Although not stated exactly as such, the Balls raise four issues on appeal: 1) whether the Trial Court erred in applying a clear and convincing standard of proof; 2) whether the Trial Court erred in finding the easement granted in 1980 was still valid and had not been abandoned even though the Watsons took no action to utilize the easement for twenty years; 3) whether the Trial Court erred in refusing to award damages for the destruction of trees within the easement; and 4) whether the Trial Court erred by providing an overly broad definition of farm equipment. We will address each issue in turn.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

We begin by considering whether the Trial Court erred by applying a clear and convincing standard of proof. The Balls argue the Trial Court erred because it did not apply a preponderance of the evidence standard pursuant to Tennessee Rule of Appellate Procedure 13(d). Further, the Balls argue there is a line of Tennessee cases that suggest fraud is established under a preponderance of the evidence standard, and so the Trial Court should have applied a preponderance standard.

This case involved allegations of abandonment of an easement, not allegations of fraud. Therefore, the Balls' argument that the Trial Court should have applied a preponderance of the evidence standard because a line of cases suggests fraud is established under this standard is of no merit.

Further, we are at a loss as to why the Balls argue the Trial Court should have applied the appellate standard of review at the trial level. Tennessee Rule of Appellate Procedure 13(d) sets forth the scope of review an appellate court will apply when reviewing findings of fact made at trial. Specifically, Tennessee Rule of Appellate Procedure 13(d) provides:

> Unless otherwise required by statute, review of findings of fact by the trial court in civil actions shall be de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise. Findings of fact by a jury in civil actions shall be set aside only if there is no material evidence to support the verdict.

Tenn. R. App. P. 13(d). This rule of appellate procedure does not delineate the standard for trial courts to apply when deciding whether the applicable standard or burden of proof has been met.

Tennessee law provides "[t]he party asserting abandonment of an easement must prove it by clear, unequivocal evidence." *Hall v. Pippin*, 984 S.W.2d 617, 620 (Tenn. Ct. App. 1998)[1]. *Accord, e.g., Miller v. Street*, 663 S.W.2d 797, 798 (Tenn. Ct. App. 1983); *Cottrell v. Daniel*, 205 S.W.2d 973, 976 (Tenn. Ct. App. 1947). Thus, the proper standard in an abandonment of an easement case is clear and unequivocal. Clear and convincing evidence and clear and unequivocal evidence are one and the same. *See Gambill v. Hogan*, 207 S.W.2d 356, 360-61 (Tenn. Ct. App. 1947) (equating "clear and convincing evidence" to "clear and unequivocal evidence" and "clear, cogent and convincing evidence").

In its order entered May 14, 2001, the Trial Court found the proof failed to establish by clear and convincing evidence that the Watsons ever intended to abandon the easement. As the Trial Court utilized the correct standard of proof as to whether the easement had been abandoned, we find no error on this issue.

We next address whether the Trial Court erred in finding that the easement granted in 1980 had not been abandoned even though the Watsons took no action to utilize the easement for almost twenty years. The Balls argue the Watsons abandoned the easement because the Watsons did not use the easement and took no steps to prepare the easement for use for twenty years. The Balls also argue that since a prescriptive easement may be acquired after a twenty year period of open and adverse use of the land of another, the Watsons' failure to use the easement for this "prescriptive period" is indicative of an intent to abandon the easement.

---

[1] On remand, new issues arose and were subsequently appealed. *See Hall v. Pippin*, No. M2001-00387-COA-OT-CV, 2001 Tenn. App. LEXIS 124 (Tenn. Ct. App. Feb. 28, 2001); *Hall v. Pippin*, No. M2000-001151-COA-R3-CV, 2002 Tenn. App. LEXIS 824 (Tenn. Ct. App. Nov. 26, 2002), *modified by*, No. M2000-01151-COA-R3-CV, 2003 Tenn. App. LEXIS 113 (Tenn. Ct. App. Feb. 11, 2003). The issues involved in the subsequent appellate history have no bearing on the holding we rely upon in this Opinion.

Tennessee law is well settled regarding abandonment of an easement. An easement may be abandoned, but the party attempting to prove abandonment must show both "an intention to abandon the easement [and] also external acts carrying that intention into effect." *Hall*, 984 S.W.2d at 620. *Accord, e.g., Phy v. Hatfield*, 126 S.W. 105, 105 (Tenn. 1909); *Boyd v. Hunt*, 52 S.W. 131, 131 (Tenn. 1899); *Cottrell*, 205 S.W.2d at 975; *Smelcer v. Rippetoe*, 147 S.W.2d 109, 113-14 (Tenn. Ct. App. 1940). Mere nonuse of the easement "is not sufficient, by itself, to prove abandonment. Nonuse must be coupled with proof that the easement holder or holders intended to abandon the easement." *Hall*, 984 S.W.2d at 620-21. *Accord, e.g., Boyd*, 52 S.W. at 131; *Edminston Corp. v. Carpenter*, 540 S.W.2d 260, 262 (Tenn. Ct. App. 1976); *Cottrell*, 205 S.W.2d at 975; *Smelcer*, 147 S.W.2d at 113-14.

The required external acts necessary to prove abandonment may be "either a single act or a series of acts." *Hall*, 984 S.W.2d at 621. Courts may consider several factors in making a determination of whether an easement has been abandoned including:

> (1) statements by the easement holder acknowledging the easement's existence and disavowing its use, (2) the easement holder's failure to maintain the easement in a condition permitting it to be used for access, (3) the easement holder's acquiescence in the acts of others that reduce the utility of the easement, (4) the easement holder's placement of a permanent obstruction across the easement, or (5) the easement holder's development of alternative access in lieu of the easement.

*Id*.

Although it is true the Watsons did not use the easement, or take steps to prepare the easement for use, for nearly twenty years, this nonuse, by itself, is insufficient to show abandonment. Even if the nonuse was indicative of abandonment, the Balls still were required to show some external acts carrying the intent to abandon into effect. A showing of mere nonuse of the easement, even for a twenty year period, is insufficient to prove the Watsons intended to abandon the easement. *Id*. at 620-21.

The record is devoid of any proof of "external acts carrying [the] intention [to abandon] into effect." *Id*. at 620. The Watsons made no statements acknowledging the easement and disavowing its use. There was no failure to maintain the easement for access because the roadway was not constructed until 1999. Henry Watson testified to the series of misfortunes which he claimed were responsible for his nonuse of the easement during those years. In addition, the Watsons did not acquiesce in acts of others that reduced the utility of the easement. Rather, when the Browders placed a gate across the easement, the Watsons filed suit. Further, the Watsons themselves placed no obstruction across the easement that would prevent its use. Finally, the record does not show the Watsons developed a means of alternate access for the purpose of ingress and egress of farm equipment. Any other avenues of access the Watsons have to their property for ingress and egress for other purposes are irrelevant as the easement was solely for the purpose of ingress and egress for farm equipment.

At trial, the Balls attempted to show the Watsons were no longer farming and thus, would not need the easement for ingress and egress for farm equipment. Mr. Watson testified he was not farming this particular property at the time of trial because he currently was using a walker and was unable to farm. However, Mr. Watson testified he did have cattle on the property when he built the road in 1999, and he wanted to use the road to get feed to his cattle. Mr. Watson testified the cattle were moved later to his other farm.

There is no evidence in the record, other than evidence of a period of nonuse, that indicates the Watsons intended to abandon the easement. Rather, the evidence indicates the Watsons took steps to clear the easement and construct a roadway, indicating an intent to use the easement. The evidence does not preponderate in favor of a finding of abandonment. Therefore, we affirm the holding that the easement had not been abandoned.

We next consider whether the Trial Court erred in refusing to award damages for the destruction of trees within the easement. Although the Balls raise the issue of damages, they cite to no law that would entitle them to recover damages for destruction of trees within the easement. The Balls' brief states that although Tenn. Code Ann. § 54-14-101, a statute pertaining to private roads, does not apply to the case at hand, the Trial Court should have allowed damages consistent with this statute. The Balls' brief, however, suggests no reason why the Trial Court should have allowed damages consistent with this statute.

We find nothing in the record to indicate why the Balls claim they should be awarded damages consistent with the statute they cite. The Balls concede Tenn. Code Ann. § 54-14-101 does not apply in this case. We agree. We, therefore, find this issue to be without merit.

We next consider whether the Trial Court erred by providing an overly broad definition of farm equipment. The Balls argue the Trial Court erred in providing an overly broad definition of farm equipment, which will enlarge the permissible use of the easement. The Balls argue that under this definition, the Watsons could simply "throw a sack of feed in any vehicle and use that vehicle to go back and forth."

The 1980 order stated the easement was "for the purpose of providing ingress and egress for farm equipment only and for no other purpose." The May 14, 2001 order stated: "[t]he purpose of said easement, that of providing ingress and egress for farm equipment only, shall remain unchanged." The Balls' motion for additional findings of fact asked for a determination of what farm equipment would be allowed across the easement. In response to that motion, the Trial Court provided a definition of the term "farm equipment." The Trial Court entered an order on November 13, 2001, that amended the May 14th order to read:

> The purpose of said easement, that of providing ingress and egress for farm equipment only, shall remain unchanged. Farm equipment is deemed to include those tools, machinery, vehicles, and other devices actually used by the [Watsons], their agents and employees, for the raising of crops and livestock on [the Watsons']

land.  The easement is not to be used as a means of providing ingress and egress to the property of [the Watsons], other than as stated above.

The November 13th order neither enlarged nor restricted the original purpose of the easement.  Rather, the Trial Court simply provided a definition for the term "farm equipment."  The definition provided did not change the character of the easement in any way.  The permissible use of the easement is still for "ingress and egress for farm equipment only and for no other purpose."  As such, we hold the definition of "farm equipment" provided by the Trial Court is not overly broad and did not change the purpose of the easement in any way.  We, therefore, find no error and affirm on this issue.

## **Conclusion**

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for such further proceedings as may be required, if any, consistent with this Opinion and for collection of the costs below.  The costs on appeal are assessed against the Appellants, L.B. Ball, and Wilma Rose Ball, and their surety.

_____
D. MICHAEL SWINEY, JUDGE