IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 26, 2014 Session

## HERMAN ROLAND, JR., ET AL. v. KELLI BRIDWELL, ET AL.

**Appeal from the Chancery Court for Carter County**
**No. 28382      John C. Rambo, Chancellor**

---

**No. E2014-00435-COA-R3-CV-FILED-OCTOBER 20, 2014**

---

This case involves a dispute as to whether the defendants' predecessors in title abandoned an easement to a shared driveway either through an express intention to abandon the easement or by inference. The defendants deny that there was an intention to abandon the right-of-way. After a bench trial, the trial court found that the plaintiffs failed to present evidence to support their claim that the predecessors in title abandoned the driveway easement. Accordingly, the trial court entered a judgment that the easement has not been abandoned by the defendants or their predecessors in title. The court further concluded that the easement was to be used for ingress and egress only, and prohibited the parties from parking on or obstructing the easement in any way. The parties were found equally responsible for the upkeep and maintenance of the shared driveway. The trial court also determined that the garage maintenance agreement had been terminated. Plaintiffs appeal. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., C.J., and THOMAS R. FRIERSON, II, J., joined.

Mark S. Dugger, Elizabethton, Tennessee, for the appellants, Herman Roland, Jr., and Diana Roland.

Keith Bowers, Jr., and Joshua A. Hardin, Elizabethton, Tennessee, for the appellees, Kelli Bridwell and Robert Bridwell.

**OPINION**

**I.  BACKGROUND**

The plaintiffs in this action, Herman Roland, Jr., and Diana Roland ("the Rolands"), are neighbors of the defendants, Kelli Bridwell and Robert Bridwell ("the Bridwells") in Elizabethton, Tennessee. The property currently owned by the Bridwells, 2514 Stateline Road, was owned previously by Haskell and Eula Felty ("the Feltys").[1] Mr. Roland acquired his property, 2512 Stateline Road, from his father, Herman Roland, Sr., in 1979.[2] Mr. Roland later conveyed a one half undivided interest in 2512 Stateline Road to his wife, Diana Roland, creating an estate by the entireties.[3]

On October 15, 1980, the Feltys, the Bridwells' predecessors in title, and Mr. Roland executed a "Deed for Easements for Joint Driveway" ("the Easement").[4] The Easement conveyed to Mr. Roland and the Feltys the perpetual right and easement of egress, ingress, and regress over and upon the joint driveway located between 2512 and 2514 Stateline Road. The Easement specifically stated that it was an appurtenant easement -- it was intended to run with both parcels of land and to bind all heirs and assigns forever.

The following year, on April 7, 1981, Mr. Roland and the Feltys entered into another agreement[5] in which they agreed to the shared use of a garage located at the end of the driveway they shared. Additionally, they agreed to share the maintenance for the garage and the driveway leading to the garage. The document provided that the shared use and maintenance of the garage and driveway was appurtenant to and runs with the land.

In April 1990, the Feltys transferred 2514 Stateline Road to Robin Felty Scamuffa.[6] A little over a decade later, in June 2000, Ms. Scamuffa transferred 2514 Stateline Road to Larry and Linda Blalock ("the Blalocks"), the predecessors in title to the Bridwells.[7]

---

[1]Deed Book 97, Page 473, Carter County Register of Deeds.

[2]Deed Book 317, Page 300, Carter County Register of Deeds.

[3]Deed Book 460, Page 97, Carter County Register of Deeds.

[4]Misc. Book 38, Page 132, Carter County Register of Deeds.

[5]Misc. Book 38, Page 136, Carter County Register of Deeds.

[6]Deed Book 380, Page 914, Carter County Register of Deeds.

[7]Deed Book 455, Page 419, Carter County Register of Deeds.

In July 2002, the Rolands and the Blalocks agreed to tear down the shared garage due to its dilapidated condition. No change was made to the shared driveway agreement. Thereafter, the Blalocks engaged in the following actions on their property: removed the concrete pad and asphalt around the former location of the garage; erected a fence and planted trees along the shared driveway; landscaped the back yard; and constructed a new gravel driveway on the other side of their property.

In September 2012, the Blalocks transferred 2514 Stateline Road to the Bridwells, the current owners of record.[8] Later that year, on Christmas Day, a dispute occurred when a guest of the Bridwells' parked on the shared driveway. The Rolands thereafter filed this lawsuit on January 3, 2013, alleging that the Blalocks, the Bridwells' predecessors in title, had abandoned the joint driveway easement based on the changes they had made on their property. Mrs. Roland later testified at trial that the Blalocks never used the easement for ingress and egress after the gravel driveway was constructed.

At the trial, Mr. Blalock related as follows: "I will state categorically that we never had any intent to abandon that portion of the right of way that was on our property, now the Bridwells' property." Mr. Blalock testified that it was a mutual decision to tear down the shared garage due to its condition. He provided that

> the roof on our side of the garage was partially missing . . . Water had gotten into the roof trusses and the ceiling joists, et cetera, and were rotted out. The old garage was leaning I'm guesstimating a good ten degrees towards town. So, it was pretty much an unsafe structure. I wouldn't walk under it.

He further noted that the concrete pad and asphalt where the garage once stood were removed due to water runoff from that area causing mold and mildew problems along the back of the Blalocks' house. According to Mr. Blalock, the trees were planted for privacy purposes and the fence was erected to keep his dogs contained.

Contrary to the assertions of Mrs. Roland, Mr. Blalock claimed that even after all the actions were taken, he, his wife, and their guests continued to make use of the easement near the front of the driveway for ingress and egress by automobile. He asserted that the easement was used to roll his garbage can to the road for pickup and to trim the trees planted along the driveway. Mr. Blalock further observed that the brick walkway from his front door to the shared driveway was left in place to access the easement.

---

[8]Deed Book 137, Page 711, Carter County Register of Deeds.

After hearing the testimony and reviewing the exhibits presented at trial, the trial court concluded, inter alia, that the Blalocks had not abandoned the shared driveway easement:

> Now, in order to prove abandonment, the Plaintiffs, who have the burden of proof, must show not only an intent, or an intention, to abandon the easement, but also external acts carrying that intention into effect. This means that the non-use of the easement by the landowner, abutting landowner, is not sufficient by itself to prove abandonment. Non-use must be coupled with proof that the easement-holder, or -holders, intended to abandon the easement.

> Now, this intention may be proved with evidence of acts clearly indicating that the easement-holder desired to lay no further claim to the benefits of the easement. Abandonment may be proved by either a single act or a series of acts. When this Court is called upon to determine whether the holder of that easement intended to abandon the easement, the Court must consider five elements, or factors.

> One, statement by the easement-holder acknowledging the easement's existence, and disavowing it. Two, the easement-holder's failure to maintain the easement in a condition permitting it to be used for access. Three, the easement-holder's acquiescence in the acts of others that reduce the utility of the easement. Four, the easement-holder's placement of a permanent construction across the easement, or five, the easement-holder's development of alternative access in lieu of that easement.

> Two instruments in question today: the shared-use agreement -- I call it a "shared-use agreement," but the agreement in the easement they are both in the chain of title; both parties are aware, or were on notice to be aware, of both instruments because it exists in the chain of title.

> The Court finds that the fence is on the Defendants' property, Bridwells,' and formerly the Blalocks.' Part of the old pad that was underneath the garage that was on the Bridwell/Blalock property was removed by the Blalocks. The garage, by mutual agreement of the parties in chain of title -- both sides agreed on the removal of the garage.

> It was necessary and appropriate to remove the garage because it was old, it was listing, part of the roof was missing, there was extensive water damage to roofing, wood substructure underneath the roof. So much so that the garage had lost its useful purpose for the protection of things and automobiles. There

-4-

was no dispute; both sides, both property-owners, agreed that it needed to be removed and it was done so with the participation of both property-owners.

Part of the asphalt on the Bridwell/Blalock side of the property-line, on their own property, was removed. A new driveway was constructed approximately two years after the removal of the garage, a new driveway for the Blalocks, now Bridwells. This is a gravel driveway and it remains gravel. The mailbox was moved, too. Now, the garage was removed, it appears and the Court so finds, in July, the summer of 2002. The new driveway came approximately two years thereafter.

In applying the four elements, the Court will begin with Element No. 1: statements by the easement-holder acknowledging the easement's existence and disavowing its use. Plaintiffs have failed in their burden of proof to show that the easement-holder, whether it's the Bridwells or the Blalocks, and those are the property-owners who have exclusively owned the property since 2000, have, either in writing or verbally, disavowed the easement. Accordingly, Element 1, a finding of abandonment, has not been made.

Two, the easement-holder's failure to maintain the easement in a condition permitting it to be used for access. Although there were photographs showing that the edge of the pavement of the joint driveway is crumbling slightly, and that may be attributable to the vegetation screening planted by the Blalocks, the cypress-shrub trees, the Plaintiffs have not proven that the easement-holder has failed to maintain the easement. The driveway is still there. There has been no request for its resurfacing or its improvement.

The record is empty of any claim that the Defendants have failed in their responsibility, which is set out in their 1981 agreement, to maintain that driveway. So, Element 2 has not been proven, the failure to maintain that joint driveway. Now, there may be some question about the removal of the asphalt and the pad, but that was exclusively on the Bridwell/Blalocks' property. It was not part of the joint driveway.

Moving to Element 3: The easement-holder's acquiescence in the acts of others that reduce the utility of the easement. The record shows that the Plaintiffs, Mr. and Mrs. Roland, have not constructed any permanent barricade, locked gate, continuously parking a car at the end of the driveway next to State Line Road, nothing to block the Blalocks or Bridwells except an occasional, sporadic time or two. For example, at the auction of personal property in

2012. But there has been nothing done by them to obstruct the use of the easement by the Defendants or their predecessors-in-title, and therefore there's nothing by the Defendants that shows that they have washed their hands and acquiesced in their inability to use the easement because of any actions of Plaintiffs.

Moving on to Element 4: The easement-holder's placement of a permanent obstruction across the easement. And let me add No. 5, too: The easement-holder's development of alternative access in lieu of easement. No. 4 and No. 5, in the Court's opinion, is the heart of the dispute adjudicated today. What was the intent of Mr. Blalock in all those actions that commenced in 2002 with the removal of the garage?

The Court finds that the removal of the garage was done, not for the purpose of abandoning the easement, but for the purpose of removing an old structure whose usefulness had come and gone as evidenced by the failure to use it as an automobile garage. It was in need of extensive repairs and both parties agreed it needed to come down. There was no agreement, that came along with that agreement to remove the garage, to abandon the [easement].

Second, the Court finds that the pad that was under the garage and the asphalt on the Blalock/Bridwell side of the property behind the Blalock/Bridwell home at the end of the joint driveway was removed. The question is: Was it removed for the intent to abandon the easement or for some other purpose? Was this removal clearly and unequivocally done for the purpose of ceasing the use of the easement?

The Court is not persuaded by the witnesses and testimony of the parties and the witnesses today. The Court finds the testimony of Mr. Blalock credible. It was done because there was water coming into the home that the purpose of removing the asphalt and the pad was not done to abandon the joint driveway; it was done to control runoff primarily, to convert impervious property, or land, to pervious. In other words, ground that could absorb water instead of asphalt and concrete that water would run off of toward the Blalock home. That was the purpose of removing the asphalt and the concrete pad; that was the primary purpose.

The secondary purpose was to provide a nice, relaxing, well-landscaped, well-featured property in the back for the enjoyment of the Blalocks, and now that benefit has been purchased and utilized by the Bridwells. These relate to each

other, of course, as landscaping measures and removal of asphalt and concrete go together in the control of runoff that was damaging the home on the property.

Next: Was the fence installed for the purpose of abandoning the joint driveway? The Court finds that it was not. The fence was built in the back for the purpose of the protection of two dogs owned by the Blalocks; that's why they built the fence, not to repudiate the driveway.

And finally: What does it mean that they built a new driveway, a gravel driveway? Does this meet Element 5, the easement-holder's development of alternative access in lieu of the easement? The Court heard testimony from Mr. Blalock of his intent, but the actions and the explanations are more persuasive than just the verbal testimony that "it was not my intent as a property-owner to abandon" an easement.

The Court believes that the driveway was built as an additional access to the property so that they could screen their property with cypress, Leyland, trees on three sides. This was a natural visual privacy screen installed by the Blalocks for the purpose of privacy. It was not constructed just along the side of the property, the one side, that was the shared property line with Plaintiffs. It was installed on three sides, both sides of the property, the northwest property line adjacent to the Rolands, the southeast property line adjacent to their other neighbor, and across the back, 84 feet, of their property where there's an apartment building in the back. The only areas that was not screened was State Line Road, which is not unusual and is customary. So, the purpose of that screening, or those trees, was not to block the driveway. They could accomplish that by just putting the screening on the one property line. It was placed on all property lines, all around the property.

So, the Court finds that the planting of the cypress trees was not done for the intent of abandoning the easement, but rather for screening, privacy purposes. That necessitated the new driveway, new parking area. Also, the new driveway and parking area are convenient. They, of course, do not preclude a future replacement garage, which presumably would account for better construction to prevent runoff into the Blalock/Bridwell home.

Further, the use of this driveway and parking lot and this joint driveway continued after 2002 and after 2004. Mr. Blalock himself would, on occasion, sporadically, and visitors and guests sporadically, but nevertheless would,

drive across the front yard from the gravel parking area in the front of the home, on the State Line Road side of the home, onto the joint driveway. And the Court finds, in reviewing and hearing the testimony and reviewing the exhibits, that there was sufficient space for them to exit from this parking area onto the joint driveway.

Further, there is evidence that by foot the joint driveway has been jointly used for egress and ingress, and the sidewalk that goes to the joint driveway has not been removed or abandoned. It has actually been utilized from time to time for the trimming of the cypress screen.

For these reasons, the Court finds that the deed -- or easement for joint driveway has not been abandoned by the Defendants or their predecessors-in-title.

The next question is: What does the easement say and what does the agreement say? In the construction of instruments creating the easement, it's the duty of this Court to ascertain and give effect to the intention of the parties. The intention of the parties with regard to the purpose and scope of the easement conveyed by an express grant -- and that's what we have here -- is determined by the language of the deed. And the easement-holder's use of the easement must be confined to the purpose stated in the grant of the easement. It is not a personal right and cannot be used, even by the dominant owner, for any purpose unconnected with the enjoyment of his estate.

The purpose is to prevent an increase . . . of the burden upon the servient estate. The Plaintiffs are the primary, or servient, estate; most of the joint driveway is upon their property. So, the easement-owner may not materially increase the burden on the servient estate or impose a new and additional burden. That's why we follow what the deed says.

The easement grants the other parties, each to the other, a perpetual right and easement of ingress, egress, and regress over and upon said driveway. It does not grant either party the right to park cars in the joint driveway. It's ingress and egress; it's to go to and from each property-owner's property.

Now, what does the agreement mean? Is it still in effect, the agreement of April 7, 1981? That agreement was for two purposes: One is the upkeep, repair, and maintenance of the garage and of said driveway. Driveway, of course, being the joint driveway. The expense to be borne one-half by the

parties each.

The Court finds that the agreement as to the garage, the upkeep, repair, and the maintenance, has run its course. It is of no legal effect because the garage, by mutual consent of the parties in chain of title -- have agreed and did remove it. There is no need for the upkeep, repair, and maintenance of the garage.

But this agreement served more than one purpose. It also served for the upkeep, repair, and maintenance of the joint driveway. That element of the agreement remains in effect so long as the easement is in effect or the parties expressly repudiate the agreement jointly, which of course, they have not done.

Both parties are enjoined from blocking or interfering with the use of the joint driveway right-of-way by the other party. Both parties are enjoined and prohibited from parking in the joint driveway. The joint driveway shall remain open for ingress, egress, and regress, as contemplated by the easement executed in 1980.

Both parties are responsible for the upkeep and maintenance of the joint driveway as contemplated by the April 7, 1981 agreement, which, the Court may add, provides its own means of determining how that will be done if the parties are unable to agree on each party's responsibility for the upkeep and repair and maintenance. That procedure of arbitration is set out in the agreement itself.

To this ruling the Rolands filed this timely appeal.


## II. ISSUE

The sole issue presented in this appeal by the Rolands is as follows: Did the trial court err in determining that the easement for a joint driveway has not been abandoned by the Bridwells or their predecessors in title?


## III. STANDARD OF REVIEW

Appellate review of the trial court's decision is de novo upon the record accompanied by a presumption of correctness of the findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d). A trial court's conclusions of law are

subject to a de novo review with no presumption of correctness. *Southern Constructors, Inc. v. Loudon Cnty. Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001). We may only overturn the judgment of the trial court if there was an error of law or the preponderance of the evidence is otherwise.

## IV. DISCUSSION

The party asserting an abandonment of an easement must prove it "by clear, unequivocal evidence." *Hall v. Pippin*, 984 S.W.2d 617, 620 (Tenn. Ct. App. 1998); *Miller v. Street*, 663 S.W.2d 797, 798 (Tenn. Ct. App. 1983); *Cottrell v. Daniel,* 205 S.W.2d 973, 976 (Tenn. Ct. App. 1947). Clear and convincing evidence and clear and unequivocal evidence are one and the same. *See Gambill v. Hogan*, 207 S.W.2d 356, 360-61 (Tenn. Ct. App. 1947). An easement may be abandoned, but the party attempting to prove abandonment must show both "an intention to abandon the easement [and] also external acts carrying that intention into effect." *Hall*, 984 S.W.2d at 620; *Cottrell*, 205 S.W.2d at 975. Mere nonuse of the easement "is not sufficient, by itself, to prove abandonment. Nonuse must be coupled with proof that the easement holder or holders intended to abandon the easement." *Hall*, 984 S.W.2d at 620-21; *Cottrell*, 205 S.W.2d at 975. The required external acts necessary to prove abandonment may be "either a single act or a series of acts." *Hall*, 984 S.W.2d at 621. Courts may consider several factors in making a determination of whether an easement has been abandoned including:

> (1) statements by the easement holder acknowledging the easement's existence and disavowing its use, (2) the easement holder's failure to maintain the easement in a condition permitting it to be used for access, (3) the easement holder's acquiescence in the acts of others that reduce the utility of the easement, (4) the easement holder's placement of a permanent obstruction across the easement, or (5) the easement holder's development of alternative access in lieu of the easement.

*Id*.

When asked if he intended to abandon the shared driveway easement, Mr. Blalock testified "we never had any intent to abandon that portion of the right of way that was on our property, now the Bridwells' property." Indeed, Mr. Blalock testified that he had obtained the permits to build a new garage off the shared driveway, but dropped those plans when he and his wife decided to move. Mr. Blalock further noted the gravel driveway "didn't have access at the back, and if I had wanted access to the [back of the] property, I would have gone up the shared driveway, removed a couple of sections of fence, re-routed the fence

appropriately, and used it."

The Rolands contend the explanation given by Mr. Blalock lacks credibility. They note that when Mr. Blalock put up the fence, planted the trees, tore up the asphalt in the rear of his property, and landscaped the rear of his property, he eliminated any means of access to the rear of the property from the joint driveway. The Rolands assert that Mr. Blalock, in constructing a new driveway on the opposite side of the property, showed a clear and unequivocal intention to abandon the joint driveway as a means of access.

The trial court found Mr. Blalock to be a credible witness. The Rolands were unable to point to any act or acts that demonstrate clearly and unequivocally that the Blalocks intended to abandon the driveway easement. Accordingly, the trial court determined that the Rolands had failed to prove by clear and unequivocal evidence that the Easement had been abandoned. The evidence does not preponderate against the trial court's findings with regard to the issue appealed.

## V. CONCLUSION

We affirm the decision of the trial court. The case is remanded for such further proceedings as may be necessary. Costs of the appeal are assessed to the appellants, Herman Roland, Jr., and Diana Roland.

_____
JOHN W. McCLARTY, JUDGE

-11-